U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 MAY 16 AM 11: 10

CLERK

BY ⟨signature⟩
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

THOMAS COLE,

    Plaintiff,

v.

FOXMAR INC., d/b/a EDUCATION
AND TRAINING RESOURCES,

    Defendant.

Case No. 2:18-cv-00220

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS, GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT, AND GRANTING PLAINTIFF'S
SUPPLEMENTAL MOTION TO AMEND THE COMPLAINT**
(Docs. 3, 12, 13)

Plaintiff Thomas Cole brings this action against Defendant Foxmar, Inc. seeking damages arising out of Defendant's termination of his employment on July 27, 2018. In his initial four-count Complaint, Plaintiff alleges claims of wrongful termination in violation of the Vermont Occupational Safety and Health Act ("VOSHA"), 21 V.S.A. §§ 201-32; wrongful termination in violation of public policy; breach of contract; and breach of the implied covenant of good faith and fair dealing.

Pending before the court are Defendant's motion to dismiss (Doc. 3), Plaintiff's motion to amend his Complaint (Doc. 12), and Plaintiff's supplemental motion to amend his Complaint (Doc. 13). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks dismissal of Plaintiff's claims for failure to state a claim upon which relief can be granted. Plaintiff opposes dismissal.

In Plaintiff's first motion to amend his Complaint, he seeks to add a claim for wrongful termination in violation of the Vermont Earned Sick Time Act ("VESTA"), 21 V.S.A. §§ 481-87. In Plaintiff's supplemental motion to amend his Complaint, he seeks

to add a claim for promissory estoppel. Defendant opposes these proposed amendments on the grounds that they are futile.

Plaintiff is represented by William J. Pettersen, IV, Esq. Defendant is represented by Kevin L. Kite, Esq., Mara D. Afzali, Esq., and Michael D. Billok, Esq.

## I.  The Complaint's Allegations.[1]

Plaintiff is a resident of Ferrisburgh, Vermont. Defendant is a corporation with headquarters in Kentucky that was awarded a Department of Labor contract to manage and operate the Northland Job Corps Center ("NJCC") in Vergennes, Vermont. The NJCC is an educational facility that provides training and employment services to disadvantaged youth and adults. On or about May 23, 2018, Defendant hired Plaintiff as a full-time residential counselor in the Department of Independent Living at NJCC. Plaintiff's duties included overseeing NJCC dormitories and ensuring that they were sanitary.

On or about Monday, July 23, 2018, a group of NJCC students reported to Plaintiff and the lead counselor, Angela Mobley, that they did not have any cleaning sanitizer. The students complained that the counselor who usually supervised their dormitory had failed to keep the dormitory properly stocked with sanitizer, although they did not specify how long this condition persisted. At the time, many of the students in that dormitory were sick, as was the counselor who usually supervised them. The students showed Plaintiff and Ms. Mobley an empty cleaning basket that purportedly should have contained cleaning supplies. Plaintiff alleges that counselors are required to ensure sanitizer is available to all students to clean their dormitories. Ms. Mobley thereafter obtained four spray bottles and sanitizer for the dormitory. At a meeting with counselors on the same day, she asked the counselors how they were doing and one of the counselors, Tori Ramos, stated that she was extremely sick. Ms. Mobley responded to the effect of "you people in Vermont need to take your medicine." (Doc. 6 at 3.) Ms. Mobley told Ms. Ramos that she could go home if she could find someone to assume her

---

[1] The factual allegations in Plaintiff's initial Complaint, First Amended Complaint, and Second Amended Complaint are identical.

2

duties and responsibilities. Plaintiff alleges that "[u]pon information and belief, Ms. Ramos ended up working her entire shift on Monday." *Id.*

On the morning of Tuesday, July 24, 2018, Plaintiff met with Alisha Grangent, the Center Director of NJCC responsible for overseeing the NJCC campus, and expressed his concern that the failure of "one or more counselors" to properly supply a dormitory with cleaning supplies and Ms. Mobley's refusal to permit counselors to leave work when they were sick was placing students and employees at risk. *Id.* at 4. Ms. Grangent responded by noting that Christina Brace, the Acting Wellness Coordinator, had informed her about an abdominal virus that was "going around campus[.]" *Id.* That same day, Plaintiff left work before the end of his shift after informing Ms. Grangent and her executive assistant that he was leaving early because he felt ill.

Plaintiff was not scheduled to work on Wednesday, July 25, 2018 or Thursday, July 26, 2018. On Wednesday July 25, 2018, Plaintiff called Defendant's Human Resources Department, located at its corporate office in Kentucky, and left a voicemail indicating that there were "some difficulties on campus at NJCC that he would like to report." *Id.* Plaintiff alleges that he received no response to his voicemail.

On the morning of Friday, July 27, 2018, prior to arriving at work, Plaintiff called Mari Trybendis, a Human Resources Assistant, and asked how to submit a written complaint regarding his health and safety concerns. He also asked for reassignment from the Department of Independent Living to another unspecified department. Ms. Trybendis directed Plaintiff to email his complaint to her as well as his request for reassignment and to copy Ms. Grangent on those communications.

Plaintiff drafted a letter to Bernadette Brookes, Human Resources Manager, wherein he explained the health and safety issues that he had witnessed earlier in the week, noted that he believed those issues posed "an unnecessary risk to him and others[,]" and requested a reassignment from the Department of Independent Living. *Id.* at 5. Plaintiff emailed this letter to Ms. Trybendis and Ms. Grangent on Friday, July 27, 2018 and asked that they direct the letter to other appropriate supervisors.

A few hours after sending the July 27, 2018 email, Plaintiff received a voicemail from Ms. Brookes notifying him that she wished to speak with him about his continued employment. Plaintiff met with Ms. Brookes that afternoon, at which time Ms. Brookes terminated Plaintiff's employment. Plaintiff asked Ms. Brookes why she had not addressed any of his complaints. Ms. Brookes responded that she had not received any complaints from him.

Defendant thereafter issued Plaintiff a termination notice dated July 27, 2018 which stated that Plaintiff was terminated because he did not report for his scheduled shifts on Monday, July 23, Tuesday, July 24, and Wednesday July 25, 2018. The termination notice was signed by Ms. Mobley, Ms. Brookes, and Howard Harmon, Defendant's Executive Vice President and Chief Operating Officer. Plaintiff alleges that the claimed reason for his termination was false and pretextual and that he was actually terminated because he complained to his supervisors regarding health and safety violations he witnessed.

Defendant's Employee Handbook (the "Handbook")[2] states as follows in its introductory section:

> All parties involved will adhere to ETR's Core Values in all that we do. This not only means that the expectation is that we will all operate in a safe environment, both physically and mentally, that will allow an open dialogue that leads to individuals taking accountability to proactively act in good faith to demonstrate a commitment to integrity and respect that allows growth for both the individual, the Center, and the Company. . . . You have the distinct privilege and responsibility to speak up when things are found out of compliance.

(Doc. 3-2 at 7.)

---

[2] The Handbook was included as an attachment in support of Defendant's motion to dismiss. Because the terms of the Handbook form the basis of several of Plaintiff's claims, they may be considered in ruling on a motion to dismiss. *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (holding that courts may "consider on a Rule 12(b)(6) motion any written instrument attached to [the complaint] as an exhibit, any statements or documents incorporated in it by reference, and any document not incorporated but that is, nevertheless, integral to the complaint because the complaint relies heavily upon its terms and effect") (citations and internal quotation marks omitted).

4

The Handbook includes a policy entitled "Free to Choose – (Employment-at-Will)" which states:

> . . . we cannot make any guarantees about your continued employment at our Company.
>
> Employees who do not have an individualized written employment contract or a collective bargaining agreement are employed at the will of the company. This means that you are free to quit at any time, for any reason, just as we are free to release you from employment at any time, for any reason with or without notice or cause.
>
> Employees may be demoted or held accountable and the terms and conditions of their employment with ETR may be modified at the sole discretion of ETR with or without cause and with or without notice. Additionally, "Employment-at-Will" means that ETR has no obligation to continue your present position, pay, or benefits.
>
> This is the entire agreement between you and ETR regarding the terms of your employment with the company. No statements made in pre-hire interviews or subsequent discussions are to alter the at-will nature of your employment. ETR's policies and practices with respect to any matter are not to be considered as creating any contractual obligation on ETR's part or as stating in any way that discharge will occur only for "just cause[.]" Statements of specific grounds for discharge set forth in this manual or in any other ETR documents are examples only, not all-inclusive lists, and are not intended to restrict ETR's right to discharge at-will. Similarly, completion of an introductory period does not change your status as an at-will employee.
>
> Other than ETR's President/CEO, no one has the authority to make any agreement for employment other than for employment-at-will or to make any agreement limiting ETR's discretion to modify terms and conditions of employment. This policy may not be modified by any statements contained in this manual or any other employee handbooks, employment applications, recruiting materials, company correspondence, or other materials provided to applicants or employees in connection with their employment. With the sole exception of the above mentioned written employment contract or collective bargaining agreement, no statements, written or oral, whether singly or combined, are to create an express or implied contract of employment for a definite period, or an express or implied contract concerning any terms or conditions of employment. Only ETR's President/CEO has the authority to make any such agreement and then only in a written document signed by the President/CEO and you.

*Id.* at 19-20.

Under the heading "Sick Leave[,]" the Handbook states: "You're miserable when you're taking it, but you can't live without it. Here's the bottom line. When you are really too sick to work, we want you to stay home and get better." *Id.* at 31.

With regard to attendance and punctuality, the Handbook provides: "Please be aware that excessive absences, lateness, or leaving early may lead to accountability actions, including losing your job. Absence from work for three (3) consecutive days without notifying your manager or the Human Resources Department will be considered a voluntary resignation and job abandonment." *Id.* at 27.

A section entitled "Employee Conduct and Accountability" distinguishes between minor offenses, major offenses, and dischargeable offenses. *Id.* at 37. "Failure to report any non-compliance issues" and "[v]iolation of safe practices; exposing self and others to injury" are classified as major offenses. This section also states: "Examples of prohibited conduct are not intended to be an all-inclusive list. At management's discretion, any violation of policies or any conduct considered inappropriate or unsatisfactory may subject the offender to accountability action, up to and including losing your job." *Id.* at 39 (italics omitted).

A section entitled "Safety and Security" provides:

> Compliance with safety and security policies and procedures will help us all in maintaining a safe Center environment that will support the high level of programming we offer. In addition, employees must call attention to conditions or situations which threaten the safety and security of others by contacting appropriate Center management representatives.

*Id.* at 49.

A "HANDBOOK ACKNOWLEDGEMENT" requires employees to attest to the following:

> I understand that nothing in the Handbook constitutes a contract or a promise of continued employment; and the Company reserves the right to modify or amend this Handbook at any time or to terminate any policies and procedures or employee benefit programs at any time.
>
> By signing this form, I understand that my employment is at-will. I understand that I have the right to end the employment relationship at any

time, for any reason, with or without notice or cause and that the Company has the same right.

I acknowledge that neither the Company nor I have entered into an employment agreement for a specified period of time, and that only the Company President/CEO may make any agreement contrary to the at-will policy. I further understand that any such agreement, if made by my manager or supervisor shall not be enforceable unless it is in writing and signed by both me and the Company President/CEO.

*Id.* at 53.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Pursuant to Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." If more than twenty one days have elapsed, "a party may amend its pleading only with the opposing party's written consent or the court's leave[,]" but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal citations omitted). The adequacy of an amended complaint "is to be judged by the same standards as those governing the adequacy of a filed pleading." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the

7

court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"When a plaintiff amends its complaint while a motion to dismiss is pending the court may deny the motion as moot or consider the merits of the motion in light of the amended complaint." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) (citation and internal quotation marks omitted). In this case, the court considers the merits of the motion to dismiss in tandem with Plaintiff's motions to amend.

### B. Whether Plaintiff's Claim for Wrongful Termination in Violation of VESTA is Futile.

In his First Amended Complaint ("FAC"), Plaintiff alleges that he reported a violation of 21 V.S.A. § 483(g), which provides that "[a]n employer shall not require an employee to find a replacement for absences, including absences for professional diagnostic, preventive, routine, or therapeutic health care[,]" and was wrongfully terminated as a result. VESTA incorporates the retaliation provision set forth in 21 V.S.A. § 397, which states:

> (a) An employer shall not discharge or in any other manner retaliate against an employee because:
>
> > (1) the employee lodged a complaint of a violation of this subchapter;
> >
> > (2) the employee has cooperated with the Commissioner in an investigation of a violation of this subchapter; or
> >
> > (3) the employer believes that the employee may lodge a complaint or cooperate in an investigation of a violation of this subchapter.
>
> (b) Any person aggrieved by a violation of this section may bring an action in the Civil Division of the Superior Court seeking compensatory and punitive damages or equitable relief, including restraint of prohibited acts, restitution of wages or benefits, reinstatement, costs, reasonable attorney's fees, and other appropriate relief.

21 V.S.A. § 397; *see also* 21 V.S.A. § 483(l) ("The provisions against retaliation set forth in section 397 of this title shall apply to this subchapter.").

8

Defendant argues that Plaintiff fails to plausibly allege that it committed a violation of 21 V.S.A. § 483(g) because he does not provide support for his allegation that another counselor was prevented from leaving work when she was sick. In the FAC, Plaintiff asserts that he overheard Ms. Mobley tell another counselor who was sick that "she could go home if she could find someone to fill in for her." (Doc. 12-1 at 4.) Plaintiff further alleges that he communicated to Ms. Grangent his concern regarding "the failure on the part of Ms. Mobley to let her counselors go home when they were sick" and that he sent a letter to Ms. Grangent and Ms. Trybendis "notifying his supervisors about the health and safety issues he had witnessed earlier in the week." *Id.* at 5-6. Accepting these facts as true, Plaintiff has plausibly alleged that Ms. Mobley required another employee, Ms. Ramos, to find a replacement in order to leave work due to an illness in violation of 21 V.S.A. § 483(g).

Defendant next contends that Plaintiff fails to plead a retaliation claim because he did not follow the procedures allegedly required by 21 V.S.A. § 483(n) or the administrative rules promulgated by the Department of Labor for lodging a complaint.[3] Plaintiff responds that his oral and written complaints to his supervisors concerning Ms. Mobley's actions constitute protected activity under 21 V.S.A. § 397(a)(1).

Neither VESTA nor the Vermont courts have defined what it means to "lodge[] a complaint" under 21 V.S.A. § 397(a)(1). The Vermont Fair Employment Practices Act ("VFEPA"), 21 V.S.A. §§ 495-96, includes the following analogous retaliation provision:

> An employer, employment agency, or labor organization shall not discharge or in any other manner discriminate against any employee because the employee . . . has lodged a complaint or has testified, assisted,

---

[3] 21 V.S.A. § 483(n) provides: "The Commissioner shall enforce this subchapter in accordance with the procedures established in section 342a of this title." Section 342a sets forth procedures for filing complaints regarding unpaid wages. "Vermont Earned Sick Time Rules[,]" promulgated by the Department of Labor, state: "An employee may file a complaint with the Commissioner in the manner prescribed by the Commissioner." Vermont Department of Labor, Vermont Earned Sick Time Rules § 13(b) (Jan. 15, 2017), http://labor.vermont.gov/wordpress/wp-content/uploads/Earned-Sick-Time-Rules.pdf. Neither VESTA nor the Vermont Earned Sick Time Rules describe the method by which a Plaintiff must lodge a complaint in order to state a claim for retaliation under 21 V.S.A. § 397.

9

or participated in any manner with the Attorney General, a State's Attorney, the Department of Labor, or the Human Rights Commission in an investigation of prohibited acts or practices[.]

21 V.S.A. § 495(a)(8)(B). The Vermont Supreme Court has construed this provision to extend to oral complaints made to supervisors. *See Beckmann v. Edson Hill Manor, Inc.*, 764 A.2d 1220, 1221-23 (Vt. 2000) (holding that where a supervisor told an employee "you've got a really nice ass" and the employee responded "[t]hat's called sexual harassment[,]" her oral complaint to her supervisor was protected activity under VFEPA and she "satisfie[d] both the first and second elements" of a VFEPA retaliation claim).

In construing the anti-retaliation provisions of the Fair Labor Standards Act, which protects employees who have "filed any complaint," the United States Supreme Court has similarly held that protection against retaliation extends to oral complaints "where the recipient has been given fair notice that a grievance has been lodged[.]" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011); *see also id.* at 17 ("We conclude that the [lower court] erred in determining that oral complaints cannot fall within the scope of the phrase 'filed any complaint' in the Act's antiretaliation provision."). In light of this precedent, the court predicts that the Vermont Supreme Court will interpret 21 V.S.A. § 397(a) to extend protection to employees who make verbal complaints to a supervisor provided the employer has fair notice of the nature of the complaint and the fact that it has been lodged. Because Plaintiff allegedly notified Ms. Grangent and Ms. Trybendis of the failure of Ms. Mobley to allow another counselor to leave work due to illness without finding a replacement, he has plausibly pled that he "lodged a complaint" regarding a VESTA violation. Plaintiff's motion to amend his Complaint to include a retaliation claim is therefore GRANTED.

### C. Whether Plaintiff's Promissory Estoppel Claim is Futile.

In his Second Amended Complaint ("SAC"), Plaintiff seeks to assert a claim of promissory estoppel, alleging that the Handbook "set forth a promise by Defendant not to terminate Plaintiff in retaliation for reporting safety violations." (Doc. 13-1 at 13, ¶ 92.) Plaintiff further alleges that he relied on this promise to his detriment and was terminated

because of the safety concerns he raised. Defendant argues that the Handbook does not contain this promise and, in any event, the cited Handbook language cannot reasonably be interpreted as a promise for continued employment.

Under Vermont law, "even if an employee otherwise enjoys only at-will employment status, that employee may still be able to establish a claim for wrongful termination under a theory of promissory estoppel[.]" *Dillon v. Champion Jogbra, Inc.*, 819 A.2d 703, 709 (Vt. 2002). "Establishment of promissory estoppel requires (1) a promise on which the promisor reasonably expects the promisee to take action or forbearance of a substantial character; (2) the promise induced a definite and substantial action or forbearance; and (3) injustice can be avoided only through the enforcement of the promise." *Green Mountain Inv. Corp. v. Flaim*, 807 A.2d 461, 464 (Vt. 2002). The "first two elements of promissory estoppel are for the finder of fact," *id.* at 497-98 (citing *City of Powell v. Busboom*, 44 P.3d 63, 66 (Wyo. 2002)), while the "determination of 'whether injustice can be avoided only by the enforcement of the promise' is a question of law[.]" *Id.* at 497 (quoting *Tour Costa Rica v. Country Walkers, Inc.*, 758 A.2d 795, 801 (Vt. 2000)).

The Vermont Supreme Court's articulation of the doctrine is based on the principles "set forth in the Restatement (Second) of Contracts § 90(1)[.]" *Foote v. Simmonds Precision Prods. Co.*, 613 A.2d 1277, 1281 (Vt. 1992). The Restatement (Second) of Contracts defines a "promise" broadly:

> the word "promise" is not limited to acts having legal effect . . . [rather] the word "promise" is commonly and quite properly also used to refer to the complex of human relations which results from the promisor's words or acts of assurance, including the justified expectations of the promisee and any moral or legal duty which arises to make good the assurance by performance. The performance may be specified either in terms describing the action of the promisor or in terms of the result which that action or inaction is to bring about.

Restatement (Second) of Contracts § 2 (1981). In order to plausibly allege a claim of promissory estoppel, the promise must be "of a specific and definite nature[.]" *Dillon*, 819 A.2d at 710.

11

The Handbook states that it is the employee's "distinct privilege and responsibility to speak up when things are found out of compliance" and that employees "must call attention to conditions or situations which threaten the safety and security of others by contacting appropriate Center management representatives." (Doc. 3-2 at 7, 49.) It further instructs employees that a failure to report any non-compliance issues is considered a "Major Offense." *Id.* at 37. These statements may reasonably be interpreted as promising that an employee who reports a safety concern will not be terminated as a result. *See Boule v. Pike Indus., Inc.*, 2013 WL 711937, at *11 (D. Vt. Feb. 27, 2013) (holding that a card instructing employees to report "unethical, illegal, or unsafe activity" to a supervisor or manager could be construed as a definite promise not to discipline an employee who complies with this request).

Defendant additionally contends that Plaintiff has failed to plausibly allege that injustice can only be avoided by enforcement of the alleged promise. With regard to this element of a promissory estoppel claim:

> Whether injustice can be avoided only by enforcement of the promise is a question of law informed by several factors, including: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; [and] (e) the extent to which the action or forbearance was foreseeable by the promisor.

*Tour Costa Rica*, 758 A.2d at 801-02. "Although this is a question of law," it necessarily "depend[s] upon the circumstances of the case." *See id.* at 801-02 & n.4. At the pleading stage, Plaintiff plausibly alleges that he relied upon Defendant's policies in reporting health and safety concerns and his adherence to those policies prompted his termination.[4]

---

[4] In *Tour Costa Rica*, the Vermont Supreme Court held that the term "enforcement of the promise" is not to be taken literally, and that a jury award of damages may provide the requisite "enforcement." *Tour Costa Rica*, 758 A.2d at 801 n.3. Defendant does not assert that Plaintiff's promissory estoppel claim is preempted, although it challenges the claim on other grounds.

For the foregoing reasons, Plaintiff's motion to amend his complaint to include a claim for promissory estoppel is GRANTED.

### D. Whether Plaintiff States a Claim Under VOSHA.

Defendant argues that Plaintiff's complaints regarding Defendant's sick leave policies and the absence of sanitizer in a dormitory did not constitute workplace safety violations under VOSHA. Plaintiff responds that because he had a reasonable belief that there were VOSHA violations and he was terminated in retaliation for reporting those violations, he properly states a claim for relief.

VOSHA includes the following provision regarding retaliation:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself, herself, or others of any right afforded by this chapter.

21 V.S.A. § 231(a). Although VOSHA is "patterned after the federal [Occupational Safety and Health Act ("OSHA"),]" *Green Mountain Power Corp. v. Comm'r of Labor and Industry*, 383 A.2d 1046, 1051 (Vt. 1978), VOSHA provides for a private right of action for any aggrieved employee who has a claim for retaliation under the statute, while OSHA does not. *See Donovan v. Occupational Safety and Health Review Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) ("Under OSHA, employees do not have a private right of action."). VOSHA provides: "[a]n employee aggrieved by a violation of section 231 of this title may bring an action in Superior Court for appropriate relief, including reinstatement, triple wages, damages, costs, and reasonable attorney's fees." 21 V.S.A. § 232.

To plead a claim for retaliation in violation of VOSHA, an employee must allege that "(1) []he was engaged in a protected activity, (2) the . . . defendant[] knew of that activity, (3) plaintiff suffered adverse employment action, and (4) a causal connection exists between plaintiff's protected activity and the adverse employment action." *Mellin v. Flood Brook Union Sch. Dist.*, 790 A.2d 408, 417-18 (Vt. 2001). "Plaintiff may

establish the required causation indirectly through the timing of [his] protected activity and . . . [D]efendant['s] alleged retaliatory actions." *Id.* at 418.

Plaintiff alleges that he reported violations of the VOSHA policy that "in their employment all persons shall be provided by their employers with safe and healthful working conditions at their work place, and that insofar as practicable an employee shall not experience diminished health, functional capacity, or life expectancy as a result of his or her work experience[,]" as well as the requirement that "practices and procedures prescribed by an employer for performance of work or duties by his or her employees shall not be insofar as practicable, dangerous to the life, body, or well being of the employees." 21 V.S.A. § 201(a-b).

The Vermont Supreme Court has not addressed whether a good faith, reasonable belief that a violation exists suffices for a VOSHA retaliation claim. In the context of other anti-retaliation laws, courts have concluded that it does. *See, e.g., Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (holding that, under the Americans with Disabilities Act, a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful "so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law"); *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (holding that a plaintiff states a *prima facie* claim for retaliation under Title VII "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law") (citation omitted).

Plaintiff alleges that he reasonably believed the lack of sanitizer in a dormitory and the failure to allow a sick employee to leave work without finding a replacement were not "safe and healthful working conditions[,]" 21 V.S.A. § 201(a), and that he was terminated soon after and in retaliation for reporting these conditions to supervisors. These factual allegations are sufficient to state a claim for retaliation in violation of VOSHA. Defendant's motion to dismiss Plaintiff's VOSHA claim is therefore DENIED.

### E. Whether Plaintiff States a Claim for Wrongful Termination in Violation of Public Policy.

Plaintiff asserts a claim of wrongful termination in violation of "public policies to protect the health and safety of employees, to protect the health and safety of students, and to protect against the spread of infectious illness and disease." (Doc. 6 at 8, ¶ 62.) In support of this claim, he cites 18 V.S.A. § 4304(a) which states that "[a]n employer shall not allow a person affected with any contagious, infectious, or other disease or physical ailment that may render employment detrimental to the public health to work in an establishment[.]"[5]

Defendant argues that Plaintiff's claim for wrongful termination in violation of public policy must be dismissed because it is duplicative of his VOSHA retaliation claim and preempted by it. The court agrees. "Under Vermont law, where a statute creates a right or remedy unknown at common law, the statutory remedy preempts a common law cause of action." *Decker v. Vermont Educational Television, Inc.*, 13 F. Supp. 2d 569, 573 (D. Vt. 1998) (citing *Winney v. Ransom & Hastings, Inc.*, 542 A.2d 269, 270 (Vt. 1988)); *see also Thayer v. Herdt*, 586 A.2d 1122, 1126 (Vt. 1990) ("When a statute confers a remedy unknown to the common law, and prescribes the mode of enforcing it, that mode alone can be resorted to.") (citation and internal quotation marks omitted).

Because Plaintiff's claim that he was terminated in violation of public policy is governed by VOSHA which creates a statutory cause of action, any common law claim based on the same facts and alleging the same legal theory of recovery is preempted. *See Boule*, 2013 WL 711937, at *24 (holding that because an employee's "wrongful termination claim based on public policy is wholly duplicative of his VOSHA retaliation

---

[5] In opposing dismissal, Plaintiff contends that he was terminated in violation of several additional public policies, such as the Vermont Rental Housing Health Code and the Vermont Earned Sick Time Act. These claims are not before the court. *See Shah v. Helen Hayes Hosp.*, 252 Fed. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Russo v. Navient Sols., LLC*, 2018 WL 1474354, at *2 n.3 (D. Vt. Mar. 23, 2018) ("It is well-settled that a plaintiff cannot amend [a] complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.") (citation omitted).

claim, it is preempted by the adequate statutory remedy set forth in VOSHA"); *see also Worthen v. Gaulin*, 2005 Vt. Super. LEXIS 99, *12 (observing that, in enacting VOSHA, "the legislature intended to preempt common law retaliation actions regarding workplace safety"). Accordingly, Defendant's motion to dismiss Plaintiff's claim for wrongful termination in violation of public policy is GRANTED.

### F. Whether Plaintiff States a Claim for Breach of Contract.

Plaintiff alleges that Defendant created an implied contract of employment through the policies and practices set out in the Handbook and that Defendant breached this implied contract by terminating Plaintiff for job abandonment even though he had not been absent for three consecutive days, or, alternatively, by terminating Plaintiff for reporting safety and non-compliance issues which the Handbook required him to report. Defendant seeks dismissal of this claim on the grounds that it is preempted by VOSHA and because no implied contract of employment existed.

Plaintiff's claim that Defendant breached an implied contract of employment by terminating Plaintiff for reporting safety and non-compliance issues is preempted by VOSHA. *See Decker*, 13 F. Supp. 2d at 573 ("Under Vermont law, where a statute creates a right or remedy unknown at common law, the statutory remedy preempts a common law cause of action."). To the extent that Plaintiff's claim is premised upon Defendant's decision to terminate Plaintiff for job abandonment, the viability of the claim depends upon whether an implied contract of employment existed.

Under Vermont law, "an employee hired for an indefinite period . . . is presumed to [be] an at-will employee." *Dulude v. Fletcher Allen Health Care, Inc.*, 807 A.2d 390, 395 (Vt. 2002). An at-will employee may be discharged at any time, with or without cause, "unless there is a *clear and compelling* public policy against the reason advanced for the discharge." *Id.* at 397 (quoting *Jones v. Keogh*, 409 A.2d 581, 582 (Vt. 1970)) (emphasis in original). However, "the presumption that employment for an indefinite term is an 'at-will' agreement is simply a general rule of contract construction" and "when an employer takes steps to give employees the impression of job security and enjoys the attendant benefits that such an atmosphere confers, it should not then be able

to disregard its commitments at random." *Dillon*, 819 A.2d at 706-07 (noting that "at-will employment relationships have fallen into disfavor").

An employer may modify at-will employment unilaterally either through its written policies or practices, or both. *Id.* at 707. In this regard, "[a]n employer not only may implicitly bind itself to terminating only for cause through its manual and practices, but may also be bound by a commitment to use only certain procedures in doing so." *Id.* Those procedures, however, must be "definitive in form, communicated to employees, and evince an employer's intent to bind itself[.]" *Havill v. Woodstock Soapstone Co.*, 783 A.2d 423, 428 (Vt. 2001) (citing *Ross v. Times Mirror, Inc.*, 665 A.2d 580, 584 (Vt. 1995)). "The critical inquiry is . . . whether the procedure amounted to an enforceable promise of specific treatment in a specific circumstance." *Ross*, 665 A.2d at 585.

With respect to the Handbook, it is well established that "in the employment context, the long-standing law of contract that the interpretation of *unambiguous* writings is a matter of law for the court, as is the determination of *whether* a writing is ambiguous." *Dillon*, 819 A.2d at 707 (citation omitted). "Only after a determination that the writing is ambiguous should the interpretation of the writing be submitted to the jury." *Id.* at 707-08. Thus, "[w]hether an employer's written policies or practices modify the parties' at-will relationship is typically an issue for the court to decide." *Naylor v. Rotech Health Care, Inc.*, 2009 WL 1684493, at *3 (D. Vt. June 16, 2009) (citing *Dillon*, 819 A.2d at 707).

Under Vermont law, disclaimers that employment is at-will, while relevant, are not dispositive. *See, e.g., Dillon*, 819 A.2d at 708 (holding that question of at-will status may be ambiguous "even if there is a disclaimer stating employment is at-will, as the presence of such a disclaimer is not dispositive in the determination"); *Smith v. Shaw's Supermarkets, Inc.*, 2019 WL 1436660, at *7 (D. Vt. Apr. 1, 2019) ("The mere inclusion of boilerplate language providing that the employee relationship is at will cannot negate any implied contract and procedural protections created by an employee handbook.") (internal citation omitted). Such disclaimers must be evaluated "in the context of all the

17

other provisions in the handbooks and any other circumstances bearing on the status of the employment agreement." *Smith*, 2019 WL 1436660, at *7 (citation omitted).

Although the Handbook includes an "accountability schedule" that distinguishes between minor offenses, major offenses, and dischargeable offenses, it also states that "at management's discretion, any violation of policies or any conduct considered inappropriate or unsatisfactory may subject the offender to accountability action, up to and including losing your job." (Doc. 3-2 at 37, 39) (italics omitted). The Handbook further states:

> Employees who do not have an individualized written employment contract or a collective bargaining agreement are employed at the will of the company. This means that you are free to quit at any time, for any reason, just as we are free to release you from employment at any time, for any reason with or without notice or cause.

(Doc. 3-2 at 19.) Although "[h]andbook provisions committing the employer to a progressive discipline system are sufficient for a jury to find that the employer may terminate the employee only for cause[,]" *Trombley v. Southwestern Vt. Med. Ctr.*, 738 A.2d 103, 108 (Vt. 1999), the plain language of the Handbook indicates that Defendant did not commit itself to using a system of progressive discipline but rather reserved the right to use progressive discipline at its discretion.

Because the language of the Handbook does not constitute "an enforceable promise of specific treatment in a specific circumstance[,]" *Ross*, 665 A.2d at 585, it does not create an implied contract of employment. On this basis, Defendant's motion to dismiss Plaintiff's claim for breach of contract is GRANTED.

### G. Whether Plaintiff States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Plaintiff alleges that Defendant violated the implied covenant of good faith and fair dealing by terminating Plaintiff for reporting safety violations. Defendant contends that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because there is no employment contract and because the claim is preempted by VOSHA.

"The covenant of good faith and fair dealing is implied in every contract; its boundaries, however, are contextual and fact-specific." *Harsch Props., Inc. v. Nicholas*, 2007 VT 70, ¶ 14, 182 Vt. 196, 201-02, 932 A.2d 1045, 1050. "It is an implied promise that protects against conduct which violates community standards of 'decency, fairness or reasonableness.'" *Id.* (quoting *Carmichael v. Adirondack Bottled Gas Corp.*, 635 A.2d 1211, 1216 (Vt. 1993)). "'A cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractual relationship between the parties[.]" *Id.* (quoting *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 54 n.5, 179 Vt. 167, 893 A.2d 298).

The Vermont Supreme Court has "decline[d] to recognize the implied covenant of good faith and fair dealing as means of recovery where the employment relationship is unmodified and at-will." *Dicks v. Jensen*, 768 A.2d 1279, 1286 (Vt. 2001) (citation omitted); *see also Ross*, 665 A.2d at 586 ("To imply a covenant as to tenure in an unmodified at-will contract irreconcilably conflicts with the employment-at-will doctrine[] and results in unreasonable judicial interference into what is a private relationship.") (citation omitted). Because Plaintiff's employment with Defendant was at-will, Defendant's motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is GRANTED. As alternative grounds for dismissal, Plaintiff's implied covenant claim is based on the same conduct as his breach of contract claim and is preempted by his VOSHA retaliation claim. *See Monahan*, 2005 VT 110, ¶ 54 n.5, 179 Vt. at 187, 893 A.2d at 316 ("[W]e will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract based *upon the same conduct*."); *Connolly v. Alderman*, 2018 WL 1136598, at *3 (D. Vt. Mar. 1, 2018) ("It is a general rule of construction in Vermont that where a statute confers a remedy unknown to common law, and prescribes the mode of enforcing it, that mode alone can be resorted to.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion to amend his Complaint to add a claim for retaliation in violation of VESTA (Doc. 12) and Plaintiff's supplemental motion to amend his Complaint to add a claim for promissory estoppel (Doc. 13). The court GRANTS in part and DENIES in part Defendant's motion to dismiss (Doc. 3) as follows: (1) the court GRANTS Defendant's motion to dismiss Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination in violation of public policy; and (2) the court DENIES Defendant's motion to dismiss Plaintiff's claim for retaliation in violation of VOSHA. Plaintiff is directed to file a Third Amended Complaint that reflects the rulings set forth herein within twenty (20) days of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of May, 2019.

Christina Reiss, District Judge
United States District Court