U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 DEC 30  PM 4: 11

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

THOMAS COLE, )
    Plaintiff, )
v. ) Civil Action No. 2:18-cv-220
)
FOXMAR, INC. d/b/a EDUCATION )
AND TRAINING RESOURCES, )
    Defendant. )

## FOURTH AMENDED COMPLAINT

NOW COMES Plaintiff Thomas Cole ("Plaintiff"), by and through his attorney, William Pettersen IV, Esq., and hereby complains against Foxmar, Inc. d/b/a Education and Training Resources ("Defendant") as follows:

1. Plaintiff is a resident of the Town of Ferrisburgh, County of Addison, State of Vermont.

2. Defendant is a business operating in the Town of Vergennes, County of Addison, State of Vermont.

3. Defendant operates the Northlands Job Corps Center ("NJCC") in Vergennes.

4. Defendant submits bids and is awarded federal contracts by the U.S. Department of Labor ("DOL") for the management and operation of Job Corps Centers, including NJCC.

5. Defendant is a private employer based out of Kentucky.

6. Defendant was awarded the contract from the DOL and took over operation of NJCC in 2018.

7. Defendant hired Plaintiff on or around May 23, 2018 as a full-time residential counselor at NJCC.

8. NJCC is an educational facility providing training and employment services to disadvantaged youth and adults to assist with their professional and personal growth.

9. NJCC assists its students in obtaining their high school diploma, driver's license, and licenses for various trades, among other things.

10. As a residential counselor, Plaintiff's duties included overseeing the dormitory life at NJCC.

11. Part of Plaintiff's oversight responsibilities included the sanitation of dormitories.

12. The Defendant's Employee Handbook required its employees "to report any non-compliance issues," to report any "violation of safe practices," and to "call attention to conditions or situations which threaten the safety and security of others by contacting appropriate Center management representatives."

13. On or around Monday, July 23, 2018, Plaintiff noticed numerous violations of safe practices.

14. Plaintiff had been assigned to a different dormitory on Monday because its usual counselor, Paige, was out sick.

15. During Plaintiff's supervision of the dormitory, the students communicated that they did not have any supply of cleaning sanitizer.

16. This sanitizer is something that all students are supposed to have in order to clean their dormitories, including the railings and doorways, and it is something that is required to be kept in stock by the counselors.

17. Mondays are the biggest cleaning day on campus, and Plaintiff was with Angela Mobley ("Ms. Mobley"), lead counselor, on Monday, July 23, 2018, when they were informed that the students in the dormitory had no supply of sanitizer.

18. Apparently, the normal counselor for that dormitory, who had called out sick that day, had failed to keep the dormitory properly stocked with sanitizer, which the students complained about to Plaintiff and Ms. Mobley.

19. The students showed Plaintiff and Ms. Mobley an empty cleaning basket with no cleaning supplies.

20. Ms. Mobley thereafter went to the purchasing department and picked up approximately four spray bottles, including sanitizer, for the dormitory.

21. However, it was unclear how long the students had been without sanitizer.

22. Furthermore, many of the students in that dormitory were sick, along with the counselor that normally supervised the dormitory.

23. At a meeting with counselors on Monday, Ms. Mobley asked how everyone was doing, and one of the counselors, Tori Ramon ("Ms. Ramon"), communicated that she was extremely sick.

24. Ms. Mobley said something to the effect of, "you people in Vermont need to take your medicine."

25. Ms. Mobley told Ms. Ramon that she could go home if she could find someone to fill in for her.

26. In other words, Ms. Mobley communicated to Ms. Ramon that she could not go home unless she could find someone to replace her.

27. Upon information and belief, Ms. Ramon ended up working her entire shift on Monday.

28. For each of these reasons, Plaintiff met with Alisha Grangent ("Ms. Grangent") on the following morning, Tuesday, July 24, 2018.

29. Ms. Grangent is the Center Director for NJCC and oversees the entire Vergennes campus.

30. During his meeting with Ms. Grangent, Plaintiff notified her about the health and safety violations that he had witnessed the day before, and he expressed his concern that these violations placed the students and employees at a risk to their health.

31. Specifically, Plaintiff communicated his concern that the failure of one or more counselors to properly supply the dormitory in question with cleaning supplies, and the failure on the part of Ms. Mobley to let her counselors go home when they were sick, were placing the students and employees at risk to their health.

32. Ms. Grangent acknowledged that she had spoken with Christina Brace ("Ms. Brace"), Acting Wellness Coordinator, and that Ms. Brace had said there was an abdominal virus going around campus that they had been getting complaints about.

33. After hearing Plaintiff's health and safety complaints, Ms. Grangent notified both Ms. Mobley and Bernadette Brookes, Human Resources Manager ("Ms. Brookes") of the complaints, at which time Ms. Mobley became angry.

34. Plaintiff subsequently left work early on Tuesday because he was feeling ill and notified Ms. Grangent and her executive assistant that he was leaving early due to illness.

35. On Wednesday, July 25, 2018, Plaintiff called Defendant's Human Resources Department at its corporate office in Kentucky and left a voicemail that there were some difficulties on campus at NJCC that he would like to report.

36. Plaintiff never received a call back.

37. Plaintiff had Wednesday and Thursday off during that week, which were his regularly scheduled days off.
38. On the morning of Friday, July 27, 2018, while preparing to return to work that day, Plaintiff called Mari Trybendis, Human Resources Assistant ("Ms. Trybendis") in the morning and asked her for direction on submitting a written complaint regarding his health and safety concerns, as well as his request for reassignment.
39. Ms. Trybendis directed Plaintiff to email her his complaint and request for reassignment and to cc Ms. Grangent.
40. Plaintiff thereafter sent an email Friday morning to Ms. Trybendis and Ms. Grangent with an attached letter again notifying his superiors about the health and safety issues he had witnessed earlier in the week.
41. Plaintiff addressed the letter to Ms. Brookes and emailed it to Ms. Grangent and Ms. Trybendis, and he asked that they direct the letter to any other appropriate supervisors.
42. In the letter, Plaintiff also asked that he be considered for reassignment out of the Department of Independent Living, where he was currently working at NJCC, based on the health and safety issues that he believed were an unnecessary risk to him and others.
43. Just a few hours later, on Friday afternoon, Plaintiff received a voicemail from Ms. Brookes notifying him that she needed to speak with him about his continued employment.
44. Plaintiff went in and met with Ms. Brookes that afternoon.
45. Ms. Brookes terminated Plaintiff's employment at their meeting.

46. Plaintiff asked Ms. Brookes why she had not addressed any of his complaints.
47. Ms. Brookes told Plaintiff that she had not received any complaints from him.
48. Defendant thereafter issued a Termination Notice dated July 27, 2018, which was signed by Ms. Mobley, Ms. Brookes, and Howard Harmon, Executive Vice-President and Chief Operating Officer ("Ms. Harmon").
49. In the Termination Notice, Defendant claimed that it was firing Plaintiff because he allegedly abandoned his scheduled shifts on Monday, July 23, 2018, Tuesday, July 24, 2018, and Wednesday, July 25, 2018.
50. This claimed reason for termination was completely false and was not the real reason for Defendant's termination of Plaintiff.
51. Despite Defendant's false allegations, Plaintiff worked all of Monday; Plaintiff worked part of Tuesday and then left sick after notifying Ms. Grangent and her executive assistant; and Plaintiff was not scheduled to work on Wednesday or Thursday of that week.
52. Defendant's true reason for terminating Plaintiff was because of the complaints he reported to his superiors about the health and safety violations he witnessed.
53. In fact, on Friday, July 27, 2018, Ms. Grangent refused to sign the Termination Notice, despite being asked to do so by Ms. Brookes, because neither Ms. Brookes nor Ms. Mobley could explain how job abandonment was possible since Plaintiff had worked on Tuesday.
54. Ms. Brookes and Ms. Mobley were also unable to answer Ms. Grangent when she asked what days Plaintiff actually missed that week, and what his scheduled days off were that week.

55. Ms. Grangent had also received constant complaints about Ms. Mobley from the staff during her time as Residential Manager.

56. Most often, these complaints were about how Ms. Mobley was threatening to discipline and terminate staff if they made complaints.

57. Ms. Mobley would also tell staff on a weekly basis that, if they had any issues, they needed to go to her first, that if they went over her head there would be consequences, and that it was not hard to replace them.

58. In addition to Ms. Mobley, corporate officials from ETR created a culture of suppressing complaints, including numerous incidents whereby those officials told Ms. Grangent and other employees to suppress complaints.

59. Ms. Mobley was directly involved in the decision to terminate Plaintiff.

## CAUSES OF ACTION

### COUNT I – WRONGFUL TERMINATION IN VIOLATION OF THE VERMONT OCCUPATIONAL SAFETY AND HEALTH ACT (VOSHA)

60. Plaintiff realleges and repeats paragraphs 1-59 as though fully set forth herein.

61. Defendant discharged and discriminated against Plaintiff because he complained to Defendant and his superiors regarding violations of VOSHA that he observed and reasonably believed to be occurring.

62. Plaintiff reported violations of VOSHA set forth in 29 C.F.R. 1925.1, requiring that Defendant, as a contractor of the United States, must not have "working conditions, provided by or under the control or supervision of the contractor or any subcontractor, which are unsanitary or hazardous or dangerous to the health or safety or service employees engaged to furnish the services."

63. Plaintiff reported violations of VOSHA set forth in 29 C.F.R. § 4.6, which requires that Defendant, as a contractor of the United States, "shall not permit any part of the services called for by this contract to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the contractor or subcontractor which are unsanitary or hazardous or dangerous to the health or safety of service employees engaged to furnish these services, and the contractor or subcontractor shall comply with the safety and health standards applied under 29 CFR part 1925."

64. Plaintiff reported violations of VOSHA's policies set forth under 21 V.S.A. § 201 that "in their employment all persons shall be provided by their employers with safe and healthful working conditions at their work place, and that insofar as practicable an employee shall not experience diminished health . . . as a result of his or her work experience" and "that practices and procedures prescribed by an employer . . . shall not be insofar as practicable, dangerous to the life, body, or well being of the employees."

65. Plaintiff reported violations of VOSHA set forth in 29 C.F.R. 1910.141(a)(3)(i), requiring that, "[a]ll places of employment shall be kept clean to the extent that the nature of the work allows."

66. Defendant had no legitimate reason for terminating Plaintiff.

67. To the extent Defendant had a legitimate reason for terminating Plaintiff, such reason was pretextual, and the actual reason for termination was retaliation against Plaintiff for complaining about VOSHA violations.

68. Plaintiff's complaints were also, at minimum, a motivating factor in Defendant's decision to terminate him.

69. Defendant would not have terminated Plaintiff without this retaliatory motivation.

70. Plaintiff is entitled to damages in an amount to be proven at trial, including reinstatement, triple wages, front pay, back pay, compensatory damages, punitive damages, costs, reasonable attorney's fees, and any other relief authorized by law, all with applicable legal interest.

## COUNT II – WRONGFUL TERMINATION IN VIOLATION OF THE VERMONT EARNED SICK TIME ACT ("VESTA")

71. Plaintiff realleges and repeats paragraphs 1-70 as though fully set forth herein.

72. Defendant discharged and discriminated against Plaintiff because he complained to Defendant and his superiors regarding a violation of VESTA that he observed and reasonably believed to be occurring.

73. Plaintiff reported a violation of § 483(g) of VESTA, which states that, "[a]n employer shall not require an employee to find a replacement for absences, including absences for professional diagnostic, preventive, routine, or therapeutic health care."

74. Defendant had no legitimate reason for terminating Plaintiff.

75. To the extent Defendant had a legitimate reason for terminating Plaintiff, such reason was pretextual, and the actual reason for termination was retaliation against Plaintiff for complaining about one or more violations of VESTA.

76. Plaintiff's complaints were also, at minimum, a motivating factor in Defendant's decision to terminate him.

77. Defendant would not have terminated Plaintiff without this retaliatory motivation.

78. Plaintiff is entitled to damages in an amount to be proven at trial, including reinstatement, front pay, back pay, compensatory damages, punitive damages, costs, reasonable attorney's fees, and any other relief authorized by law, all with applicable legal interest.

## COUNT III – PROMISSORY ESTOPPEL

79. Plaintiff realleges and repeats paragraphs 1-78 as though fully set forth herein.
80. In the event the Employee Handbook did not create an employment contract, it nonetheless set forth a promise by Defendant not to terminate Plaintiff in retaliation for reporting safety violations.
81. Defendant reasonably expected, or should have reasonably expected, Plaintiff to take action of a substantial character based on this promise, including the action of reporting safety violations, as well as any activity he reasonably believed could be a safety violation.
82. This promise did in fact induce the definite and substantial action by Plaintiff of reporting safety violations and activities he reasonably believed could be safety violations.
83. Injustice can only be avoided by the enforcement of this promise.
84. Plaintiff is entitled to damages in an amount to be proven at trial, including expectation damages, restitution damages, reliance damages, punitive damages, costs, reasonable attorney's fees, and any other relief authorized by law, all with the applicable legal interest.

WHEREFORE, Plaintiff requests the following relief:

1. Judgment in favor of Plaintiff on each of his claims.
2. Damages in an amount to be proven at trial.

3. Costs.

4. Reasonable attorney's fees.

5. Any other relief authorized by law.

6. Judgment interest.

7. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff request a trial by jury on all issues so triable.

Dated at Colchester, Vermont this 27th day of November, 2019.

THOMAS COLE

By: /s/ William Pettersen IV
William Pettersen IV, Esq.
Pettersen Law PLLC
1084 East Lakeshore Dr.
Colchester, VT 05446
pettersenlaw@gmail.com
(802) 477-2780

11