UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

THOMAS COLE, )
)
Plaintiff, )
)
v. ) Case No. 2:18-cv-00220
)
FOXMAR, INC., d/b/a EDUCATION )
AND TRAINING RESOURCES, )
)
Defendant. )

**ENTRY ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED
MOTION FOR ATTORNEY'S FEES AND COSTS**
(Doc. 232)

Plaintiff Thomas Cole seeks attorney's fees and costs in the total amount of $258,944.73. Plaintiff recovered $55,000.00 in compensatory damages at trial. Defendant Foxmar, Inc., d/b/a Education and Training Resources opposes Plaintiff's requests.

**I.      Factual and Procedural Background.**

Plaintiff brought this suit against Defendant seeking damages as a result of Defendant's termination of Plaintiff's employment on July 27, 2018. At trial, the jury considered two claims: retaliation in violation of the Vermont Occupational Safety and Health Act ("VOSHA"), 21 V.S.A. §§ 201-32, and retaliation in violation of the Vermont Earned Sick Time Act ("VESTA"), 21 V.S.A. §§ 481-87, and returned a verdict for Plaintiff on both claims. It awarded Plaintiff $215,943.00 in compensatory damages, comprised of $55,305.00 in back pay, $85,638.00 in front pay, and $75,000.00 in emotional distress damages. The jury also awarded Plaintiff $3 million in punitive damages, for total damages of $3,215,943. The court entered judgment on the verdict on August 2, 2021.

On October 4, 2021, Plaintiff filed his initial motion for attorney's fees, seeking $130,067.00 in fees, $10,427.98 in costs, and prejudgment interest on the jury's back pay award of $55,305.00. Defendant opposed the motion for attorney's fees. On August 27, 2021, Defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, arguing the jury verdict was not supported by the evidence and violated Due Process. The court granted in part the motion for a new trial after determining, among other things, that the jury's $3 million punitive damages award was unreasonable and "manifestly and grossly excessive" under Vermont law and the Due Process Clause. *Sweet v. Roy*, 801 A.2d 694, 715 (Vt. 2002). For this reason, the court ordered a new trial on the issue of damages. On July 1, 2022, the court denied Plaintiff's initial motion for attorney's fees without prejudice.

Thereafter, the parties engaged in settlement negotiations. Defendant sought to enforce their alleged settlement agreement. Plaintiff asked the court to deny that motion, arguing that he did not fully agree to Defendant's terms and conditions and the parties' agreement had not been reduced to a signed writing. The court found, based on the totality of the evidence, that "a binding settlement agreement was not reached between Plaintiff and Defendant and [could not] be enforced." (Doc. 176 at 12.)

On November 18, 2022, Defendant timely served its Rule 68 offer of judgment and offered Plaintiff $375,000.00 to settle the case. Plaintiff did not accept Defendant's offer.

On December 16, 2022, a jury returned a verdict finding Defendant owed Plaintiff $35,000.00 in back pay, $20,000.00 in emotional distress damages, and no punitive damages, resulting in a total damages award of $55,000.00. On January 30, 2024, the Second Circuit issued a mandate, affirmed the judgment, and found, among other things, that "there is no real dispute that [Plaintiff's prior jury] award was excessive to the point of violating due process." (Doc. 235 at 8.) It further found that "[b]ecause the punitive damages award here was so excessive that it would require a similarly out-of-proportion remittitur, the district court had good reason to order a new trial [on damages] outright." *Id.* at 10.

On January 12, 2024, Plaintiff filed a renewed motion for attorney's fees in the amount of $240,536.75 and costs in the amount of $18,407.98. (Doc. 232.) In support of his motion, Plaintiff provided the expert opinion of Joshua Simonds, Esq., who opined that:

> [b]ased on [his] opinions of the reasonableness of the amount of time spent of 751 hours through the first trial and 435.10 hours through retrial, and the reasonableness of the fee, it is my opinion that an application for attorney's fees in the amount of $240,536.75 in fees for the successful trial and retrial of [Plaintiff's] claims is reasonable and appropriate.

(Doc. 232-2 at 20.) Attorney Simonds also opined that "there [were] no factors which support a downward adjustment of fees[,]" even though Plaintiff was ultimately unsuccessful in obtaining a similar damages award during the retrial, and that $18,407.98 in costs and litigation expenses were necessary, reasonable, and appropriate in this case. *Id.* Defendant filed a response on May 30, 2024 and argued that "much of Attorney Pettersen's time expended on this litigation was not reasonable or justifiable." (Doc. 240 at 6-7.) After Plaintiff filed a reply on June 13, 2024, the court took the pending motion under advisement.

Plaintiff is represented by William Pettersen, Esq. Defendant is represented by Kevin L. Kite, Esq., Mara D. Afzali, Esq., Michael D. Billok, Esq., and Paul J. Buehler, III, Esq.

## II.     Conclusions of Law and Analysis.

### A.     Standard of Review.

The court has "discretion [] to determine what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)). "[W]hen a prevailing party is entitled to attorneys' fees, the [] court 'must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court.'" *Id.*

A court may begin its analysis by calculating attorney's fees under the "lodestar" approach, whereby it determines a "presumptively reasonable fee" based on a reasonable hourly rate and the reasonable number of hours required by the case. *Id.* (citing *Arbor*

3

*Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). "[T]he fee applicant bears the burden of establishing entitlement to an award[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

Under Vermont law, a person aggrieved by a violation of VESTA may seek, among other things, "costs, reasonable attorney's fees, and other appropriate relief[,]" 21 V.S.A. § 397(b), and "the court may make [an] award of costs as may seem equitable and just." 21 V.S.A. § 396(e). VOSHA authorizes individuals to bring actions "for appropriate relief, including reinstatement, triple wages, damages, costs, and reasonable attorney's fees[,]" 21 V.S.A. § 232, although the statute does not define costs. "The trial court has discretion in awarding costs." *Peterson v. Chichester*, 600 A.2d 1326, 1329 (Vt. 1991) (citation omitted).

The court finds Plaintiff has sustained his burden of establishing an award of reasonable attorney's fees is warranted. In determining the amount of the appropriate award, the court considers the lodestar as well as other factors identified by the Second Circuit and the Vermont Supreme Court.

### B. Reasonable Fee Factors.

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue*, 559 U.S. at 552.

In determining the fee a reasonable client would be willing to pay, a court considers case-specific variables, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

4

*Arbor Hill*, 522 F.3d at 184 (footnote omitted). Other relevant factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989) (clarifying that the fee arrangement factor is "but a single factor and not determinative" and "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees")); *see also Arbor Hill*, 522 F.3d at 190 ("In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors[.]").

### C. Reasonable Hourly Rate.

"The reasonable hourly rate is the rate a paying client would be willing to pay[,] bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. While the rate an attorney charges to paying clients may be evidence of a reasonable hourly rate, it is not dispositive. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'"). When calculating a presumptively reasonable fee, the court looks to the "approximate market rate" in the relevant community, *Arbor Hill*, 522 F.3d at 192, which is typically defined as the district in which the court sits. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009) ("[A] district court must first apply a presumption in favor of application of the forum rule."). Absent such a showing, the court presumes that a reasonable client would "in most cases hire counsel from within his district, or at least counsel whose rates

5

are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 191. A district court judge may "rely in part on the judge's own knowledge of private firm hourly rates in the community[.]" *See Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).

Plaintiff submitted the declaration of Attorney Pettersen in which he stated his regular rate for the years 2018 through 2020 was $165.00 per hour. Starting in 2021, he increased his regular rate to $185.00 per hour for new clients, and he again increased his hourly rate for new clients in 2022 to $205.00. Defendant "does not contest Attorney Pettersen's historic billing rate, but contests application of his 'new client' rate to time expended in 2022" because Plaintiff was an existing client, not a new client. (Doc. 240 at 6) (footnote omitted).

"[C]urrent rates, rather than historical rates, should be applied in order to compensate for delay in payment[.]" *LeBlanc-Sternberg*, 143 F.3d at 764. Attorney Simonds opined that "$205 is at the lower end of usual and customary rates charged in Burlington and Vermont for litigation" in 2022. (Doc. 232-2 at 19.) The court agrees. It therefore finds Attorney Pettersen's 2022 rate of $205.00 reasonable for attorneys of similar experience in the Burlington, Vermont area.

### D. Administrative Tasks and Travel Time.

Defendant argues that a 50% reduction of Attorney Pettersen's full billing rate for time spent completing administrative tasks such as calendaring, downloading files, confirming dates, paying invoices, and traveling is appropriate. Attorney Pettersen objects to an across-the-board reduction in his fees for the "limited" entries that include administrative and non-administrative tasks, although he recognizes that "given Defendant has correctly pointed out these 14.70 billable hours included some administrative tasks, it makes sense that those hours be decreased to an administrative rate such as $75.00." (Doc. 241 at 3.) Defendant lists the following entries from Attorney Pettersen's time entries which it contends include clerical tasks:

| Date | Description | Hours |
|---|---|---|
| 12/7/18 | Receive and reply to email from Attorney Kite; review Foxmar's filings; email Mr. Cole re: same; calendar response deadline. Correspondence | .2 |
| 12/21/18 | Receive and review Motion to Dismiss from Court by Foxmar; save files and calendar response deadline of 1/21 based on Local Rule 7(a)(3)(A). Review | .6 |
| 7/14/19 | Calendar all discovery deadlines and set reminders. Review | .5 |
| 9/23/19 | Receive and reply to email from Mr. Cole setting up time to speak about case strategy. Consulting | .1 |
| 9/25/19 | Phone conference with Mr. Cole to select day for his deposition and to discuss scheduling and cost of our depositions of Defendant's employees; reply to email from Attorney Billok and propose deposition date anytime during week of 11/4. Consulting | 1.1 |
| 9/26/19 | Receive and reply to email from Attorney Billok re: scheduling of Mr. Cole's deposition for 11/4 or 11/5; email Mr. Cole re: same and calendar proposed dates. Correspondence | .2 |
| 9/27/19 | Receive and reply to email from Mr. Cole re: deposition scheduling; email Attorney Kite re: same confirming 11/5 as date. Correspondence | .1 |
| 11/1/19 | Perform legal research on required deposition notice; calendar to meet and confer w/ Attorneys Billok and Afzali on 11/4 to notify of intent to file Motion to Compel if information is not rec'd by end of next week. Review | .4 |
| 11/26/19 | Review notes of conversation with potential expert witness R[i]chard Heaps; call and leave voicemail; email re: same; research discovery rules regarding expert witnesses and reports; receive and reply to email from Attorney Afzali re: scheduling of deposition of Bernadette Brookes; draft Motion to Amend Third Amended Complaint; perform legal research thereto; file Motion; call deposition court reporters for 12/12 proposed date for Ms. Brookes' deposition. Draft/Revise | 3.6 |
| 11/27/19 | F[i]le and serve signed Fourth Amended Complaint per Court's request; phone conference with Richard Heaps re: expert retention and report and documents needed; email Mr. Cole re: same; receive documents from Mr. Cole re: income and damages; review and outline; draft and serve Notice of Deposition of Ms. Brookes for 12/12; calendar; email reporter to confirm deposition coverage; receive and pay invoice for ENE. Correspondence | 2.4 |

7

| 1/13/20 | Email Attorney Bueller re: scheduling of deposition of Ms. Howell; receive email re: same; receive email from Attorney Bueller re: same; message Ms. Howell re: same. Correspondence | .3 |
|---|---|---|
| 1/17/20 | Perform legal research on reasonable notice required for expert deposition; review Defendant's correspondence re: expert deposition; email Expert Heaps notifying him of Defendant's request for availability for deposition; receive and review ENE Report. Research | .6 |
| 1/21/20 | Receive and reply to email from Attorney Bueller re: scheduling of deposition of Mr. Heaps. Correspondence | .1 |
| 8/12/21 | Receive and review Defendant's Motion to Subpoena or Interview Jurors; calendar response deadline. Review | .4 |
| 8/20/21 | Review Stipulated Motion to Extend Deadlines and Court's Order re: same; calendar deadlines. Review | .2 |
| 9/30/21 | Phone conference with Attorney Simonds re: Motion for Attorney's Fees, Costs and Prejudgment Interest and his request for extension of motion deadline; email Attorneys Billok and Buehler re: same; receive and reply to emails re: same; email Attorney Simonds re: same; draft and file Stipulated Motion to Extend Filing Deadline; email Attorney Simonds re: same; compile billing records separated by 2018-20 and 2021; email Attorney Simonds re: same. Correspondence | 1.8 |
| 8/15/22 | Phone call from Mr. Cole re: supplemental discovery; download Mr. Cole's job application records from job search site; receive and reply to email from Mr. Cole re: supplemental discovery; review Defendant's requests and draft outline of supplemental discovery still needed; draft email to Mr. Cole re: same. Documentation | .9 |
| 8/16/22 | Receive call from Mr. Cole re: supplemental discovery issues; receive emails from Mr. Cole re: same; save documents to file re: same; call and email Mr. Cole's prior employers to request documentation. Correspondence | 1 |

(Doc. 232-1 at 8-9, 14, 16, 20, 23, 58, 60, & 68.) Because these entries include administrative tasks, Attorney Pettersen's hourly rate for 14.70 hours is reduced to $75.00. *See Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019) ("[I]t is highly unlikely that a paying client would agree to pay any person $450 for an hour of sending

8

and receiving faxes, calling medical offices, and delivering papers."). The court therefore reduces the overall fee request by $1,911.00.[1]

With respect to billing for travel time, Attorney Pettersen stated in his declaration that "[t]he statements of [his] hours in this case include approximately 25.5 hours of travel time to depositions, mediation, trial[,] and retrial." (Doc. 232-1 at 3, ¶ 8.) The court concludes that a 50% reduction of his rate for the time spent on travel is appropriate. *See Capax Discovery, Inc. v. AEP RSD Invs., LLC*, 2023 WL 140528, at *8 (W.D.N.Y. Jan. 10, 2023) ("To reflect the substantial travel time at issue, travel time will therefore be compensated at half the approved hourly rate."); *Suk Joon Ryu v. Hope Bancorp, Inc.*, 2018 WL 4278353, at *7 (S.D.N.Y. Aug. 29, 2018) (finding hours billed for travel time unreasonable given that courts typically approve fees at 50% of an attorney's usual rate for hours spent traveling). Because Attorney Pettersen previously discounted his hourly rate for travel by 50%, no further reduction is required. *See* Doc. 232-2 at 20 n.11.

### E.  Specificity of Time Records and Block Billing.

Defendant next argues that "numerous entries" in Attorney Pettersen's records "provide no detail whatsoever regarding the work that was performed." (Doc. 240 at 10.) Plaintiff responds that "all but one entry specified the nature of the research, or the motion or issue to which it related[,]" and that "time entries show[] entries for emails, drafting, outlining, and depositions [and] specified who they involved and the issues to which they related." (Doc. 241 at 4.)

Although attorneys are not required to "record in great detail how each minute of [their] time was expended," they should "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12. Block billing is not automatically prohibited, however, the practice "makes it difficult for the court to assess the reasonableness of individual activities[.]" *Sun Yeul Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 4288064, at *6 (S.D.N.Y. Sept. 25, 2024) (citing *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming district court's across-the-board

---

[1] 14.7 hours at $205.00/hour = $3,013.50. 14.7 hours at $75.00/hour = $1,102.50. $3,013.50 - $1,102.50 = $1,911.00 reduction.

reduction due to obfuscation inherent in block billing)); *see also Degreenia-Harris v. Life Ins. Co. of N. Am.*, 2021 WL 5979683, at *11-12 (D. Vt. Dec. 17, 2021) (concluding "the court cannot determine whether the hours incurred are reasonable" due to "extensive use of block billing . . . [w]ithout indicating the amount of time spent on discrete tasks").[2]

Defendant has identified a number of entries for which Attorney Pettersen grouped substantive legal tasks together without a clear indication of how much time he spent on each task. The majority of the entries, however, contain sufficient specificity to allow the court to generally discern what duties were performed and the amount of time expended on certain categories of tasks. While the court was not always able to review Attorney Pettersen's billing on a task-by-task basis, a reduction on this basis is not warranted.

### F.  Reasonable Number of Hours.

Defendant's primary argument with regard to the number of hours incurred is that Plaintiff's counsel "expended an unnecessary amount of time on certain tasks and performed needless tasks that inflated his fees." (Doc. 240 at 12.) For example, Defendant notes that Plaintiff filed motions to amend the Complaint multiple times, resulting in a Fourth Amended Complaint, and filed a motion for reconsideration which it contends "did not even attempt to meet the requisite standard." *Id.* at 13. In addition, Defendant points out that Attorney Pettersen spent approximately twelve hours drafting

---

[2] In *Degreenia-Harris v. Life Ins. Co. of N. Am.*, 2021 WL 5979683, at *11-12 (D. Vt. Dec. 17, 2021), the court provided the following entry for 6.7 hours as a demonstration of "problematic" block billing:

> Prepare [plaintiffs] for their trial testimony. Revise, edit and complete bench memorandum on the admissibility of [witness's] June 15, 2021 email and June 18, 2021 letter, and two checks from LINA. Legal research regarding mootness doctrine, as set forth in the U.S. Supreme Court and 2nd Circuit Court of Appeals, as it relates to a defendant's voluntary decision to pay a claim in an effort to avoid judgment. Legal research regarding "some degree of success" under ERISA case law, and the "catalyst theory" of an award of attorneys' fees. Telephone conferences with [plaintiffs]. Legal research of ethical opinions and case law on appropriate attorneys' fees in a case involving a contingency fee agreement and a statutory award of attorneys' fees.

*Id.*

10

the initial Complaint, which included only four causes of action. More generally, Defendant questions why this relatively simple case consumed years of litigation.

The relevant question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). "Hours that are excessive, redundant, or otherwise unnecessary[] are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted). "[The Second Circuit] do[es] not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

In this case, there is no indication that Plaintiff's counsel was unable to perform other legal work or that the case was so demanding that it required extraordinary amounts of legal research or factual investigation. Although the case spanned several years, Plaintiff's strategic decisions regarding how to pursue the case were responsible for much of that time period. Defendant was not recalcitrant or uncooperative, but instead attempted to settle the case to avoid a second trial. Defendant's settlement offer was attractive enough for Plaintiff to initially indicate that he would accept it. Defendant's offer of judgment dwarfed Plaintiff's ultimate recovery. The court does not reduce the fee award solely on that basis, but cites these undisputed facts to underscore that Defendant sought to speed the resolution of this case while Plaintiff arguably needlessly prolonged it.

Attorney Pettersen was skillful in handling the case, but the case was not one in which specialized expertise was required. Although the VESTA statute was untested, its plain language was clear and the jury did not struggle to understand the applicable law as it might in a complex securities or patent case. The facts were also relatively straightforward and pertained primarily to Defendant's treatment of sick employees other than Plaintiff and its response to Plaintiff's complaints about that practice. The fact that

Plaintiff did not use every witness deposed at trial or was not successful in every motion does not necessitate a finding that the hours expended were unreasonable, however, the court considers the extent of discovery and motion practice in analyzing "the resources required to prosecute the case effectively[.]" *Arbor Hill*, 522 F.3d at 184.

When the court found the jury's punitive damages award excessive, Plaintiff appealed that determination to the Second Circuit. The Second Circuit dispatched with Plaintiff's challenge to this court's decision in an eleven-page decision, observing Plaintiff "received a substantial compensatory damages award of $215,943 capped off by a whopping $3 million punitive award, reflecting a double-digit ratio of nearly 14 to 1[,]" and "the jury's punitive damages award was nearly twenty-four times greater than the maximum civil penalties to which [Defendant] was subject[,]" resulting in an "award [that] was excessive to the point of violating due process." (Doc. 235 at 7-8.) On retrial, a jury unanimously found no punitive damages were warranted and dramatically reduced Plaintiff's compensatory damages as well. Plaintiff chose to appeal the second jury's verdict not only to the Second Circuit, but to the United States Supreme Court as well. While proper, the likelihood that the United States Supreme Court would grant *certiorari* was so remote as to render that effort unreasonable.

In responding to Defendant's motion, Plaintiff provides explanations for spending time on the issues Defendant identifies, such as the expenditure of forty hours on a motion to reconsider, and the need to revise the complaint several times. While the court agrees that both areas reflect some "overkill," the thrust of the court's concern is whether a reasonable paying client would accept these expenditures without a significant reduction. For example, a paying client confronted with a bill for $8,200.00 (40 hours x $205.00) for a motion to reconsider would likely find that charge excessive when apprised of the exacting standard for reconsideration and the likelihood of prevailing. Similarly, the need to revise a twelve-page Complaint four times would prove difficult to justify. A reasonable client would also question the need for years of litigation to achieve a relatively modest recovery.

An attorney's fees award should not incentivize the expenditure of above-average

12

amounts of time on routine legal tasks. The court concludes that a discount of 25% is warranted on this basis. *See Sands v. Runyon*, 28 F.3d 1323, 1333 (2d Cir. 1994) (affirming district court's exclusion of hours that represented an "unreasonable expenditure of time[,] includ[ing] hours that are excessive, redundant, or otherwise unnecessary") (internal quotation marks omitted).

### G. Whether a Further Adjustment is Appropriate.

To the extent Plaintiff seeks an upward adjustment of fees because this case is one of the first arising under either VOSHA or VESTA, it is not warranted by the facts and circumstances of this case. While this was a novel case under VESTA, it was by no means the first case under VOSHA. It was neither complex, nor was it an undesirable one in terms of Plaintiff's ability to find counsel to represent him. Although Plaintiff was successful on both of his liability claims at trial, his ultimate success was modest, and he reaped the rewards of Defendant's violations directed at other employees who received no compensation for those violations.

Defendant's request for a downward adjustment based on Plaintiff's overall success is more compelling. As the Second Circuit has observed, "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted). "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained[.]" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted). The court is not limited to assessing success on individual claims, but rather must consider "the [overall] quantity and quality of relief obtained[.]" *Id.* (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)).

Although Plaintiff is correct that he was successful on his two claims at trial, his recovery of compensatory damages was reduced and his punitive damages claim failed completely on retrial. The court cannot find a reasonable paying client would be willing

13

to spend $240,536.75 in attorney's fees to recover $55,000.00.[3] Even if no direct correlation between the fees and the amount recovered is required, a truly disproportionate recovery does not satisfy VESTA's and VOSHA's requirements that any fee award be "reasonable."

It is undisputed that Plaintiff could have obtained a better recovery through acceptance of Defendant's offer of judgment, which would have been more than six times the amount Plaintiff ultimately recovered. *See Lohman v. Duryea Borough*, 574 F.3d 163, 167-68 (3d Cir. 2009) (reducing attorney's fees award where the plaintiff was offered $75,000.00 in settlement and recovered only $12,205.00 at trial); *see also Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees[.]"). A defendant should not be required to pay for every strategic decision made by a plaintiff if those decisions were either unreasonable or substantially reduced the plaintiff's overall success.

Based on the totality of the evidence, the court determines that a substantial downward adjustment is warranted to avoid a windfall, to render the fee award reasonable, and to incentivize both plaintiffs and defendants to act reasonably in fee-shifting cases. For the foregoing reasons, the court orders an additional across-the-board reduction of 30% of Attorney Pettersen's fees to reflect the degree of success achieved, together with a 25% reduction for unreasonable expenditure of time, resulting in a total

---

[3] *See Mango v. BuzzFeed, Inc.*, 397 F. Supp. 3d 368, 377 (S.D.N.Y. 2019) (reducing attorney's fees by 30% where "a reasonable, paying client seeking to spend the minimum amount would likely balk at paying an attorney over $66,000 in fees for an award of $8,750"); *see also Mobius v. Quest Diagnostics Clinical Lab'ys, Inc.*, 2020 WL 5250704, at *2 (W.D.N.Y. Sept. 3, 2020) (reducing attorney's fee award by 50% because, among other reasons, defendants "did not prevail in obtaining dismissal, arguably the crux of their motion to dismiss"). Such a recovery would be wholly disproportionate to the success achieved. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (stating where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.").

14

reduction of 55% and an award of $107,381.59,[4] which remains almost twice Plaintiff's recovery of damages at trial.

### H.   Costs and Expenses.

Finally, Defendant argues that Plaintiff is precluded from recovering costs incurred after its Fed. R. Civ. P. 68 offer of judgment. Attorney Pettersen's "Expense Detail" contains the following items: "Witness & mileage fees for Ms. Trybendis"; "testimony at retrial of Mr. Heaps"; "Payment to Johanna Masse, Court Reporter, for trial transcript"; and payment to trial readers. *See* Doc. 232-1 at 75-81. Plaintiff responds that the expenses listed by Defendant "were not requested anywhere in the Motion or Bill of Costs" and that "[t]he expense records show $8,014.53 in costs for retrial, but these costs were not included in Plaintiff's Motion or Bill of Costs." (Doc. 241 at 9-10.)

"At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). "The cost-shifting mechanism of Rule 68 is 'designed to encourage settlements without the burdens of additional litigation.'" *Holmes v. Apple Inc.*, 797 F. App'x 557, 562 (2d Cir. 2019) (quoting *Stanczyk v. City of New York*, 752 F.3d 273, 280 (2d Cir. 2014)). "Rule 68's language is mandatory, stating that 'the offeree *must* pay the costs incurred.'" *Holmes v. Apple, Inc.*, 2020 WL 1862571, at *2 (S.D.N.Y. Apr. 14, 2020) (quoting Fed. R. Civ. P. 68(d)) (emphasis in original). "[A]ll costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.'" *Marek v. Chesny*, 473 U.S. 1, 9 (1985). "The trial court has discretion in awarding costs." *Peterson*, 600 A.2d at 1329 (citation omitted).

Plaintiff did not accept Defendant's offer of judgment of $375,000.00. After the second trial, the jury awarded Plaintiff $55,000.00. Because Plaintiff obtained a judgment that was "not more favorable than the unaccepted offer, [he] must pay the costs incurred

---

[4] $238,625.75 x 0.55 = $131,244.16 subtracted from $238,625.75 to yield $107,381.59.

after the offer was made." Fed. R. Civ. P. 68(d). Upon review of the bill of costs, the court concludes that Plaintiff's costs incurred after November 18, 2022, were not included in his Bill of Costs, and no additional reduction is warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's renewed motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART. (Doc. 232.) Plaintiff is directed to submit a proposed judgment for a fee and costs award in the amount of $107,381.59 and $18,407.98 consistent with this Entry Order within thirty (30) days.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 29th day of October, 2024.

Christina Reiss, Chief Judge
United States District Court