U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUL 16   A 9:46

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

THOMAS COLE,                                    )
                                               )
          Plaintiff,                            )
                                               )
     v.                                         )     Case No. 2:18-cv-00220
                                               )
FOXMAR, INC., d/b/a EDUCATION                   )
AND TRAINING RESOURCES,                         )
                                               )
          Defendant.                            )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS,
GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES ON APPEAL,
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
TO APPLY CURRENT HOURLY RATE**
(Docs. 232, 250, & 251)

I.     **Factual and Procedural Background.**

Plaintiff brought this suit against Defendant seeking damages as a result of

Defendant's termination of Plaintiff's employment on July 27, 2018. At trial, the jury

considered two claims: retaliation in violation of the Vermont Occupational Safety and

Health Act ("VOSHA"), 21 V.S.A. §§ 201-32, and retaliation in violation of the Vermont

Earned Sick Time Act ("VESTA"), 21 V.S.A. §§ 481-87, and returned a verdict for

Plaintiff on both claims.

On October 4, 2021, Plaintiff filed his initial motion for attorney's fees, seeking

$130,067.00 in fees, $10,427.98 in costs, and prejudgment interest. Defendant opposed

the motion and, on August 27, 2021, filed a motion for judgment notwithstanding the

verdict or, in the alternative, for a new trial, arguing the jury verdict was not supported by

the evidence and violated Due Process. The court granted in part the motion for a new

trial after determining, among other things, that the jury's punitive damages award was

unreasonable and "manifestly and grossly excessive" under Vermont law and the Due

Process Clause. *Sweet v. Roy*, 801 A.2d 694, 715 (Vt. 2002). For this reason, the court

ordered a new trial on the issue of damages. On July 1, 2022, the court denied Plaintiff's initial motion for attorney's fees without prejudice.

Thereafter, the parties engaged in settlement negotiations. Defendant sought to enforce their alleged settlement agreement. Plaintiff asked the court to deny that motion, arguing that he did not fully agree to Defendant's terms and conditions and the parties' agreement had not been reduced to a signed writing. The court found, based on the totality of the evidence, that "a binding settlement agreement was not reached between Plaintiff and Defendant and [could not] be enforced." (Doc. 176 at 12.)

On November 18, 2022, Defendant timely served its Rule 68 offer of judgment and offered Plaintiff $375,000.00 to settle the case. Plaintiff did not accept Defendant's offer.

On December 16, 2022, in a retrial solely on the issue of damages, a jury returned a verdict finding Defendant owed Plaintiff $35,000.00 in back pay, $20,000.00 in emotional distress damages, and no punitive damages, resulting in a total damages award of $55,000.00. On January 30, 2024, the Second Circuit issued a mandate, affirmed the judgment, and found, among other things, that "there is no real dispute that [Plaintiff's prior jury] award was excessive to the point of violating [D]ue [P]rocess." (Doc. 235 at 8.) It further found that "[b]ecause the punitive damages award here was so excessive that it would require a similarly out-of-proportion remittitur, the district court had good reason to order a new trial [on damages] outright." *Id.* at 10.

On January 12, 2024, Plaintiff filed a renewed motion for attorney's fees in the amount of $240,536.75 and costs in the amount of $18,407.98. (Doc. 232.) In support of his motion, Plaintiff provided the expert opinion of Joshua Simonds, Esq., who opined that:

> [b]ased on [his] opinions of the reasonableness of the amount of time spent of 751 hours through the first trial and 435.10 hours through retrial, and the reasonableness of the fee, it [was his] opinion that an application for attorney's fees in the amount of $240,536.75 in fees for the successful trial and retrial of [Plaintiff's] claims is reasonable and appropriate.

(Doc. 232-2 at 20.) Attorney Simonds also opined that "there [were] no factors which support a downward adjustment of fees[]" and that $18,407.98 in costs and litigation expenses were necessary, reasonable, and appropriate in this case. *Id.* Defendant filed a response on May 30, 2024, and argued that "much of Attorney Pettersen's time expended on this litigation was not reasonable or justifiable." (Doc. 240 at 6-7.)

On October 29, 2024, the court granted in part and denied in part Plaintiff's renewed motion, concluding that Plaintiff was entitled to an award of reasonable attorney's fees under VESTA and VOSHA but imposing two across-the-board reductions. (Doc. 242.) It applied a twenty-five percent reduction based on the conclusion that Plaintiff's counsel billed an unreasonable amount of time litigating the case and a thirty percent reduction based on the determination that a downward adjustment was "warranted to avoid a windfall, to render the fee award reasonable, and to incentivize both plaintiffs and defendants to act reasonably in fee-shifting cases." *Id.* at 14. The court reasoned that no "reasonable paying client would be willing to spend $240,536.75 in attorney's fees to recover $55,000.00[]" and "a truly disproportionate recovery does not satisfy VESTA's and VOSHA's requirements that any fee award be 'reasonable.'" *Id.* at 13-14.

Plaintiff appealed the court's award of attorney's fees to the Second Circuit on November 25, 2024. On November 12, 2025, the Second Circuit held that the court did not abuse its discretion in imposing the twenty-five percent reduction due to unreasonable hours but did abuse its discretion in imposing the thirty percent reduction "because it was based upon an erroneous application of Vermont law." (Doc. 249-1 at 19.) It concluded that, in adjusting an attorney's fee award to account for the results of the litigation, "proportionality – *i.e.*, the mathematical relationship between a plaintiff's damages award and the plaintiff's attorney's fee award – is not a permissible measure of a plaintiff's degree of success under Vermont law." *Id.* at 11. It opined that Vermont law "permit[s] consideration of the amount of damages awarded to a plaintiff as *one* measure of their success[]" but "is clear that proportionality cannot be given . . . determinative effect, particularly in the context of a public welfare statute[,]" including VESTA and VOSHA.

3

*Id.* at 14 (emphasis in original). The Second Circuit found that the court "substantially relied on proportionality [between Plaintiff's damage and fee awards] to impose the thirty percent reduction in [Plaintiff's] fee award." *Id.* at 15. It vacated the court's award of attorney's fees and remanded to the court "to calculate a reasonable fee award consistent with [its] opinion." *Id.* at 19.

Plaintiff sought a hearing en banc, which was denied. He does not seek attorney's fees for this phase of the litigation. Following remand to this court, Plaintiff filed motions seeking an award of attorney's fees on appeal in the amount of $11,495.00. (Doc. 250.) He also sought his current hourly rate of $275 to apply to the entire attorney's fee award on remand. (Doc. 251.) In support of his motion for attorney's fee on appeal, Plaintiff provided the expert opinion of Attorney Simonds, who opined that $275 is:

> reasonable and within the range of usual and customary rates in [the Burlington and Vermont] legal market based on [his] experience, knowledge of the legal market and of Plaintiff's counsel, and for the reasons more fully stated in ¶ 28 of [his] Affidavit submitted January 24, 2023 in this matter.

(Doc. 250-2 at 2, ¶ 4.) Defendant opposed the motions on January 22, 2026, (Docs. 253 & 254), and Plaintiff replied on January 29, 2026. (Docs. 257 & 258). The court held a hearing on February 9, 2026, at which time it took the pending motions under advisement.

Plaintiff is represented by William J. Pettersen, Esq. Defendant is represented by Kevin L. Kite, Esq., Mara D. Afzali, Esq., Michael D. Billok, Esq., and Paul J. Buehler, III, Esq.

## II.   Conclusions of Law and Analysis.

### A.   Standard of Review.

The court has "discretion [] to determine what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) (internal quotation marks omitted)). "[W]hen a prevailing party is entitled to attorneys' fees, the [] court 'must

4

abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court.'" *Id.*

The "starting point" in analyzing whether a request for attorney's fees is appropriate is "the lodestar[1]—the product of a reasonable hourly rate and the reasonable number of hours required by the case[.]" *Id.*; *see generally Lilly v. City of New York*, 934 F.3d 222, 227-34 (2d Cir. 2019) (discussing calculation of reasonable hourly rate and reasonable number of hours expended). The party seeking fees bears the "burden of showing that the claimed rate and number of hours are reasonable," *Lilly*, 934 F.3d at 229, and must provide a court with sufficient information to assess the fee application. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512-13 (S.D.N.Y. 2011). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Under Vermont law, a person aggrieved by a violation of VESTA may seek, among other things, "costs, reasonable attorney's fees, and other appropriate relief[,]" 21 V.S.A. § 397(b), and "the court may award any costs it determines to be equitable and just." 21 V.S.A. § 396(e). VOSHA authorizes individuals to bring actions "for appropriate relief, including reinstatement, triple wages, damages, costs, and reasonable attorney's fees[,]" 21 V.S.A. § 232, although the statute does not define costs. "The trial court has discretion in awarding costs." *Peterson v. Chichester*, 600 A.2d 1326, 1329 (Vt. 1991) (citation omitted).

The court finds Plaintiff has sustained his burden of establishing that an award of reasonable attorney's fees is warranted, both for services provided through retrial and on

---

[1] The Vermont Supreme Court employs the term "lodestar," *see, e.g.*, *Knapp v. Dasler*, 2025 VT 66, ¶ 5, 356 A.3d 1038, 1040, while the Second Circuit has adopted "the term 'presumptively reasonable fee' instead of the traditional term 'lodestar' because the meaning of the latter term 'has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.'" *Lilly v. City of New York*, 934 F.3d 222, 229 n.33 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). The Second Circuit has recognized, however, that "[f]or all intents and purposes, the two terms mean the same thing." *Id.* Because Plaintiff seeks attorney's fees under Vermont statutes, the court uses the term "lodestar."

appeal. *See Savino v. Comput. Credit, Inc.*, 71 F. Supp. 2d 173, 177 (E.D.N.Y. 1999) ("If a prevailing party is entitled to attorney's fees in the underlying action, that party is also entitled to a reasonable attorney's fee for costs incurred in obtaining a successful ruling on appeal.") (citing *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357 (2d Cir. 1997); *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 101 (2d Cir. 1997)). In determining the amount of the appropriate award, the court considers the lodestar as well as other factors identified by the Second Circuit and the Vermont Supreme Court.

## B.    Reasonable Fee Factors.

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). In determining the fee a reasonable client would be willing to pay, a court considers case-specific variables, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (footnote omitted). Other relevant factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

6

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989) (clarifying that the fee arrangement factor is "but a single factor and not determinative[]" and "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees")); *see also Arbor Hill*, 522 F.3d at 190 ("In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors[.]").

### C.    Reasonable Hourly Rate.

"The reasonable hourly rate is the rate a paying client would be willing to pay[,] . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. While the rate an attorney charges to paying clients may be evidence of a reasonable hourly rate, it is not dispositive. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'").

"In calculating a reasonable rate, a court typically applies the 'forum rule,' which sets the 'hourly rates employed in the district in which the reviewing court sits' as a 'presumptively reasonable fee.'" *Chaney v. Vt. Bread Co.*, 2024 WL 1270788, at *2 (D. Vt. Mar. 26, 2024) (quoting *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011)). "To determine the prevailing market rate, the [c]ourt is to 'take judicial notice of the rates awarded in prior cases,' and use 'the court's own familiarity with the rates prevailing in the district.'" *Id.* (quoting *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209-10 (2d Cir. 2005)). The court also considers other factors, including the time and labor required, the novelty and the difficulty of the questions, and the level of skill required to perform the legal service properly. *Arbor Hill*, 522 F.3d at 186 n.3.

Plaintiff submitted the declaration of Attorney Pettersen in which he stated his regular rate for the years 2018 through 2020 was $165.00 per hour. Starting in 2021, he increased his regular rate to $185.00 per hour for new clients, and he again increased his hourly rate for new clients in 2022 to $205.00. He then increased his hourly rate for new

clients to $225 per hour at the start of 2024, to $240 per hour at the start of 2025, and to $275 per hour at the start of 2026.

Defendant contests the application of Attorney Pettersen's current billing rate to the rate calculation because Plaintiff did not preserve the issue on appeal and Defendant has already paid $107,381.59 in attorney's fees in compliance with the court's October 29, 2024 order. *See* Docs. 254-3, 254-4, & 254-5. In response, Plaintiff argues that it would have been premature to raise the issue of the current hourly rate on appeal and that the current hourly rate is required by law. Plaintiff agrees, however, to "limit[] his request to attorney's fees not already paid by Defendant." (Doc. 257 at 2.)

The Second Circuit vacated this court's award of attorney's fees and directed the court to recalculate a reasonable fee consistent with its opinion. Second Circuit precedent instructs that "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]" *LeBlanc-Sternberg*, 143 F.3d at 764. This is in recognition that "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed[.]" *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989). "The court is not necessarily required, however, to award attorney's fees based on current hourly rates when the delay is due in whole or in substantial part to the fault of the party seeking fees." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998).

In this case, although Plaintiff previously delayed the payment of attorney's fees, some of the responsibility for the delay in payment lies with the district court. The court therefore applies current rates to the rate calculation, accounting for the fees already paid by Defendant, by using current rates only for the time period after Defendant's payment. *See Gierlinger v. Gleason*, 1999 WL 222604, at *4 (W.D.N.Y. Apr. 2, 1999) (applying current market rates at time of recalculation of fee award following remand from Second Circuit). Any other approach penalizes Defendant for its prompt payment of attorney's fees awarded by the court.[2]

---

[2] There is scant case law on whether, in recalculating an attorney's fee award, a court should impose a higher hourly rate on fees that have already been paid pursuant to a court order based

Attorney Simonds opined that $275 is "reasonable and within the range of usual and customary rates in [the Burlington and Vermont] legal market[.]" (Doc. 251-2 at 2, ¶ 4.[3] The court agrees. It therefore finds Attorney Pettersen's 2026 rate of $275.00 reasonable for attorneys of similar experience in the Burlington, Vermont area.

## D.    Administrative Tasks and Travel Time.

In its opposition to Plaintiff's renewed motion for attorney's fees, Defendant argues that a fifty percent reduction of Attorney Pettersen's full billing rate for time spent completing administrative tasks such as calendaring, downloading files, confirming dates, paying invoices, and traveling is appropriate. Attorney Pettersen agrees to decrease 14.70 billable hours through retrial "to an administrative rate such as $75.00." (Doc. 241 at 3.) Defendant lists the following entries from Attorney Pettersen's time entries through retrial which it contends include clerical tasks:

| Date | Description | Hours |
|---|---|---|
| 12/7/18 | Receive and reply to email from Attorney Kite; review Foxmar's filings; email Mr. Cole re: same; calendar response deadline. Correspondence | .2 |
| 12/21/18 | Receive and review Motion to Dismiss from Court by Foxmar; save files and calendar response deadline of 1/21 based on Local Rule 7(a)(3)(A). Review | .6 |
| 7/14/19 | Calendar all discovery deadlines and set reminders. Review | .5 |
| 9/23/19 | Receive and reply to email from Mr. Cole setting up time to speak about case strategy. Consulting | .1 |
| 9/25/19 | Phone conference with Mr. Cole to select day for his deposition and to discuss scheduling and cost of our depositions of | 1.1 |

on the current rates. To impose a higher rate on fees that have already been paid does not compensate a plaintiff for a delay in payment because there has been no delay. It, however, disincentivizes a defendant from paying promptly and effectively asks it to repay the award at a higher rate. By applying Plaintiff's current rate to the *unpaid* amount upon remand, Plaintiff is compensated for any delay and Defendant is rewarded for prompt payment. The court finds this approach equitable and reasonable in the unique circumstances of this case.

[3] Attorney Simonds's January 24, 2023 affidavit opined that, in 2022, "$205 [was] at the lower end of usual and customary rates charged in Burlington and Vermont for litigation[,]" with "Senior Partner rates ranging from $400 to $460 per hour[]" and "negotiated rates with insurance companies [ranging from] $150 to $160 per hour." (Doc. 232-2 at 19, ¶ 28.).

| | | |
|---|---|---|
| | Defendant's employees; reply to email from Attorney Billok and propose deposition date anytime during week of 11/4. Consulting | |
| 9/26/19 | Receive and reply to email from Attorney Billok re: scheduling of Mr. Cole's deposition for 11/4 or 11/5; email Mr. Cole re: same and calendar proposed dates. Correspondence | .2 |
| 9/27/19 | Receive and reply to email from Mr. Cole re: deposition scheduling; email Attorney Kite re: same confirming 11/5 as date. Correspondence | .1 |
| 11/1/19 | Perform legal research on required deposition notice; calendar to meet and confer w/ Attorneys Billok and Afzali on 11/4 to notify of intent to file Motion to Compel if information is not [received] by end of next week. Review | .4 |
| 11/26/19 | Review notes of conversation with potential expert witness R[i]chard Heaps; call and leave voicemail; email re: same; research discovery rules regarding expert witnesses and reports; receive and reply to email from Attorney Afzali re: scheduling of deposition of Bernadette Brookes; draft Motion to Amend Third Amended Complaint; perform legal research thereto; file Motion; call deposition court reporters for 12/12 proposed date for Ms. Brookes' deposition. Draft/Revise | 3.6 |
| 11/27/19 | F[i]le and serve signed Fourth Amended Complaint per Court's request; phone conference with Richard Heaps re: expert retention and report and documents needed; email Mr. Cole re: same; receive documents from Mr. Cole re: income and damages; review and outline; draft and serve Notice of Deposition of Ms. Brookes for 12/12; calendar; email reporter to confirm deposition coverage; receive and pay invoice for ENE. Correspondence | 2.4 |
| 1/13/20 | Email Attorney Bue[h]ler re: scheduling of deposition of Ms. Howell; receive email re: same; receive email from Attorney Bue[h]ler re: same; message Ms. Howell re: same. Correspondence | .3 |
| 1/17/20 | Perform legal research on reasonable notice required for expert deposition; review Defendant's correspondence re: expert deposition; email Expert Heaps notifying him of Defendant's request for availability for deposition; receive and review ENE Report. Research | .6 |
| 1/21/20 | Receive and reply to email from Attorney Bue[h]ler re: scheduling of deposition of Mr. Heaps. Correspondence | .1 |
| 8/12/21 | Receive and review Defendant's Motion to Subpoena or Interview Jurors; calendar response deadline. Review | .4 |
| 8/20/21 | Review Stipulated Motion to Extend Deadlines and Court's Order re: same; calendar deadlines. Review | .2 |

10

| 9/30/21 | Phone conference with Attorney Simonds re: Motion for Attorney's Fees, Costs and Prejudgment Interest and his request for extension of motion deadline; email Attorneys Billok and Buehler re: same; receive and reply to emails re: same; email Attorney Simonds re: same; draft and file Stipulated Motion to Extend Filing Deadline; email Attorney Simonds re: same; compile billing records separated by 2018-20 and 2021; email Attorney Simonds re: same. Correspondence | 1.8 |
| 8/15/22 | Phone call from Mr. Cole re: supplemental discovery; download Mr. Cole's job application records from job search site; receive and reply to email from Mr. Cole re: supplemental discovery; review Defendant's requests and draft outline of supplemental discovery still needed; draft email to Mr. Cole re: same. Documentation | .9 |
| 8/16/22 | Receive call from Mr. Cole re: supplemental discovery issues; receive emails from Mr. Cole re: same; save documents to file re: same; call and email Mr. Cole's prior employers to request documentation. Correspondence | 1 |

(Doc. 232-1 at 8-9, 14, 16, 20, 23, 28, 58, 60, & 68.) Because the entries combined both legal tasks and purely administrative tasks, the court cannot easily discern which hours should be excluded. Attorney Pettersen's hourly rate for 14.70 hours through retrial is reduced to $75.00. *See Lilly*, 934 F.3d at 234 ("[I]t is highly unlikely that a paying client would agree to pay any person $450 for an hour of sending and receiving faxes, calling medical offices, and delivering papers.").

With respect to billing for travel time through retrial, Attorney Pettersen stated in his declaration that "[t]he statements of [his] hours in this case include approximately 25.5 hours of travel time to depositions, mediation, trial[,] and retrial." (Doc. 232-1 at 3, ¶ 8.) The court concludes that a fifty percent reduction of his rate for the time spent on travel is appropriate.[4] *See Courthouse News Serv. v. Gabel*, 2026 WL 1694596, at *13 (D. Vt. June 11, 2026) (finding that "courts in the Second Circuit 'typically approve compensation for travel time at half the timekeeper's ordinary hourly rate.'") (quoting

---

[4] Plaintiff agrees that, for travel time, "'[t]he billing . . . time at one half . . . of the hourly rate is proper.'" (Doc. 241 at 2) (quoting *Kauffman v. Maxim Healthcare Servs., Inc.*, 2008 WL 4223616, at *10 (E.D.N.Y. Sept. 9, 2008)).

11

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2025 WL 3012879, at *4 (S.D.N.Y. Oct. 28, 2025)); *see also Hemant Patel, M.D., P.C. v. Bandikatla*, 2024 WL 1509238, at *13 (S.D.N.Y. Apr. 5, 2024) ("[T]he custom in this Circuit is to reduce billing rates for travel by [fifty percent].") (internal quotation marks and citation omitted), *aff'd*, 2025 WL 3264679 (2d Cir. Nov. 24, 2025).

With respect to the appeal, Defendant argues that Attorney Pettersen's administrative tasks "should be compensated at a significantly reduced clerical rate." (Doc. 253 at 5.) Attorney Pettersen "agrees those fees must be reduced[.]" (Doc. 258 at 1.) Defendant points to the following entries from Attorney Pettersen's time entries during appeal which it contends include clerical tasks:

| Date | Description | Hours |
|---|---|---|
| 2/7/25 | Correspondence: Receive email from formatting and printing company re: quote and documents needed; finalize appendix and email to formatting and printing company for finalizing. | .3 |
| 2/13/25 | Correspondence: Receive and reply to email from formatting company re: Joint Appendix and cover page formatting; review same. | .4 |
| 2/25/25 | Correspondence: Receive []email from printing company re: joint appendix; review draft joint appendix; reply to email providing corrections re: same. | .3 |
| 2/26/25 | Draft/Revise: Receive email from printer with Joint Appendix; review; draft revisions to Appellant Brief adding citations to Joint Appendix page numbers; reply to email from printer with revisions to Joint Appendix. | 1.2 |
| 3/3/25 | Draft/Revise: Receive and reply to email from printer re: electronic filing. | .1 |
| 3/4/25 | Correspondence: Receive and reply to email from printer re: electronic filing of Appellant Brief; receive email from printer with final copies electronically formatted and paginated; review same; reply to email re: same. | .2 |
| 3/12/25 | Correspondence: Receive Notice of Defendant's Briefing Deadline issued by Second Circuit. | .1 |

(Doc. 250-1 at 6-7.) Because these entries include administrative tasks, Attorney Pettersen's hourly rate for 2.60 hours is reduced to $75.00. *See Lilly*, 934 F.3d at 234. Neither party contends there was any travel time for the appeal.

### E.    Specificity of Time Records and Block Billing.

Defendant argues that "numerous entries" in Attorney Pettersen's records through retrial "provide no detail whatsoever regarding the work that was performed." (Doc. 240 at 10.) Plaintiff responds that "all but one entry specified the nature of the research, or the motion or issue to which it related[,] and that "time entries show[] entries for emails, drafting, outlining, and depositions [and] specified who they involved and the issues to which they related." (Doc. 241 at 4.) Defendant makes the same argument with respect to Attorney Pettersen's billing records for the appeal. *See* Doc. 253 at 6. Plaintiff counters that "Defendant fails to cite to any specific time entries to which it objects based on block billing" or time inflation. (Doc. 258 at 2.)

Although attorneys are not required to "record in great detail how each minute of [their] time was expended[,]" they should "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12. Block billing is not automatically prohibited; however, the practice "makes it difficult for the court to assess the reasonableness of individual activities[.]" *Sun Yeul Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 4288064, at *6 (S.D.N.Y. Sept. 25, 2024) (citing *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming district court's across-the-board reduction due to obfuscation inherent in block billing)); *see also Degreenia-Harris v. Life Ins. Co. of N. Am.*, 2021 WL 5979683, at *11-12 (D. Vt. Dec. 17, 2021) (concluding "the court cannot determine whether the hours incurred are reasonable[]" due to "extensive use of block billing . . . [w]ithout indicating the amount of time spent on discrete tasks").[5]

---

[5] In *Degreenia-Harris v. Life Ins. Co. of N. Am.*, 2021 WL 5979683, at *11 (D. Vt. Dec. 17, 2021), the court provided the following entry for 6.7 hours as a demonstration of "problematic[]" block billing:

Prepare [plaintiffs] for their trial testimony. Revise, edit and complete bench memorandum on the admissibility of [witness's] June 15, 2021 email and June 18, 2021 letter, and two checks from LINA. Legal research regarding mootness doctrine, as set forth in the U.S. Supreme Court and 2nd Circuit Court of Appeals, as it relates to a defendant's voluntary decision to pay a claim in an effort to avoid judgment. Legal research regarding "some degree of success" under ERISA case law, and the "catalyst theory" of an award of attorneys' fees. Telephone conferences with [plaintiffs]. Legal research of ethical opinions and case law on

With respect to Attorney Pettersen's time entries through retrial, Defendant has identified a number of entries for which Attorney Pettersen grouped substantive legal tasks together without a clear indication of how much time he spent on each task. The majority of the entries, however, contain sufficient specificity to allow the court to generally determine the duties performed and the amount of time expended on them. Defendant's failure to identify the specific time entries it challenges based on block billing or time inflation makes it difficult to credit its objection. A reduction on this basis is therefore not warranted.

**F.      Reasonable Number of Hours.**

Defendant argues that, throughout the retrial, Plaintiff's counsel "expended an unnecessary amount of time on certain tasks and performed needless tasks that inflated his fees." (Doc. 240 at 12.) For example, Defendant notes that Plaintiff filed motions to amend the Complaint multiple times, resulting in a Fourth Amended Complaint, and filed a motion for reconsideration which it contends "did not even attempt to meet the requisite standard." *Id.* at 13. In addition, Defendant points out that Attorney Pettersen spent approximately twelve hours drafting the initial Complaint, which included only four causes of action. More generally, Defendant questions why this relatively simple case consumed years of litigation and cites Plaintiff's recalcitrance in accepting settlement offers and offers of judgment that would have yielded more than a jury ultimately awarded.

The relevant question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). "Hours that are excessive, redundant, or otherwise unnecessary[] are to be excluded; and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours

---

appropriate attorneys' fees in a case involving a contingency fee agreement and a statutory award of attorneys' fees.

*Id.*

claimed as a practical means of trimming fat from a fee application[.]" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted). "[The Second Circuit] do[es] not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

After considering Plaintiff's strategic decisions that prolonged the litigation, the skill required by the case, and the time spent on routine motions, this court previously applied a twenty-five percent discount to the fee award. On appeal, the Second Circuit upheld this reduction as within the district court's discretion considering the "excessive and unreasonable amount of time litigating this case[.]" (Doc. 249-1 at 9). It noted that the court "relied on factors that the Vermont Supreme Court has repeatedly recognized as appropriate when assessing reasonableness[]" and concluded that the court's "application of these factors is supported by the record, does not rely on an erroneous application of Vermont law, and was otherwise within its 'wide discretion.'" *Id.* at 9-10 (citing *Walsh v. Cluba*, 2015 VT 2, ¶ 18, 198 Vt. 453, 462, 117 A.3d 798, 805)).

Plaintiff argues that "the Second Circuit's reasoning on this issue was mistaken" because the twenty-five percent reduction "contradicts a litigant's right to the courts, including the right to decline settlement offers and the right to appeal, for which attorney's fees may not be reduced." (Doc. 257 at 2-3.) He further contends that "the litigation tasks cited by the [c]ourt as unreasonable only amounted to $11,669.50 and therefore, even if reduced completely by [one hundred percent], in no way supported the twenty-five percent reduction totaling $60[,]134 in attorney's fees." (Doc. 251 at 4-5.) This court is not in a position to question the Second Circuit's mandate.

As part of its calculation of the twenty-five percent discount, this court observed that:

> Although the case spanned several years, Plaintiff's strategic decisions regarding how to pursue the case were responsible for much of that time period. Defendant was not recalcitrant or uncooperative, but instead attempted to settle the case to avoid a second trial. Defendant's settlement offer was attractive enough for Plaintiff to initially indicate that he would

accept it. Defendant's offer of judgment dwarfed Plaintiff's ultimate recovery. The court does not reduce the fee award solely on that basis, but cites these undisputed facts to underscore that Defendant sought to speed the resolution of this case while Plaintiff arguably needlessly prolonged it.

(Doc. 242 at 11.) As this court stated, it did not reduce the fee award solely on the basis of Plaintiff's rejection of an offer of judgment, his refusal to honor a verbal offer to settle, or his appeal to the United States Supreme Court[6] but, rather, because:

> Attorney Pettersen was skillful in handling the case, but the case was not one in which specialized expertise was required. Although the VESTA statute was untested, its plain language was clear and the jury did not struggle to understand the applicable law as it might in a complex securities or patent case. The facts were also relatively straightforward and pertained primarily to Defendant's treatment of sick employees other than Plaintiff and its response to Plaintiff's complaints about that practice. The fact that Plaintiff did not use every witness deposed at trial or was not successful in every motion does not necessitate a finding that the hours expended were unreasonable[;] however, the court considers the extent of discovery and motion practice in analyzing "the resources required to prosecute the case effectively[.]" *Arbor Hill*, 522 F.3d at 184.

> \*\*\*

> In responding to Defendant's motion, Plaintiff provides explanations for spending time on the issues Defendant identifies, such as the expenditure of forty hours on a motion to reconsider, and the need to revise the [C]omplaint several times. While the court agrees that both areas reflect some "overkill," the thrust of the court's concern is whether a reasonable paying client would accept these expenditures without a significant reduction. For example, a paying client confronted with a bill for $8,200.00 (40 hours x $205.00) for a motion to reconsider would likely find that charge excessive when apprised of the exacting standard for reconsideration and the likelihood of prevailing. Similarly, the need to revise a twelve-page Complaint four times would prove difficult to justify. . . .

> An attorney's fees award should not incentivize the expenditure of above-

---

[6] Plaintiff notes that he "did not seek any fees relating to his appeal" following the retrial. (Doc. 251 at 7) (emphasis omitted). He asserts that reducing attorney's fees because of his appeal "would violate the recognized right of an individual to appeal[,]" but recognizes that, "[o]f course, attorney's fees sought for an appeal may be reduced based on the success of that appeal[.]" *Id.* at 8; *see, e.g., S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 82 (2d Cir. 1990) ("[A] party that loses in the district court has the right to pursue any and all bona fide arguments upon appeal[.]") (alteration adopted) (internal quotation marks and citation omitted).

16

average amounts of time on routine legal tasks.

(Doc. 242 at 11-13.) The twenty-five percent reduction was thus a reflection of the court's conclusion that the time spent on this litigation "was unreasonable, excessive, and unnecessary[,]" (Doc. 249-1 at 9), a conclusion with which the Second Circuit agreed.

In light of the amount of time spent on routine legal tasks and the Second Circuit's finding that the court did not abuse its discretion in imposing a twenty-five percent discount in its initial decision, the court concludes that a discount of twenty-five percent through retrial is warranted. *See Sands v. Runyon*, 28 F.3d 1323, 1333 (2d Cir. 1994) (affirming district court's exclusion of hours that represented an "unreasonable expenditure of time[,] includ[ing] hours that are excessive, redundant, or otherwise unnecessary") (internal quotation marks omitted).[7]

## G.    Lodestar Calculation.

The Vermont Supreme Court has described the lodestar method as requiring a court to first calculate a lodestar amount and then apply adjustments to that figure. *See Trevor v. Icon Legacy Custom Modular Homes, LLC*, 2019 VT 54, ¶ 86, 210 Vt. 614, 654, 217 A.3d 496, 525. The court therefore calculates the lodestar amount before considering further adjustments.

Attorney Pettersen worked 751 hours on the case through the first trial and an additional 435.1 hours through the completion of the retrial, for a total of 1,186.1 hours. *See* Doc. 232-1 at 2, ¶ 3, 5. The court imposes a twenty-five percent discount for unreasonable expenditure of time, which the parties agreed should be applied to the 1,186.1 hours, resulting in 889.575 hours.[8] In accordance with the court's previous fee award, Defendant paid $107,381.59 in attorney's fees on November 19, 2024, which

---

[7] Defendant does not challenge and the court does not find that the number of hours expended on the appeal was unreasonable.

[8] $1,186.1 \times (1 - 0.25) = 889.575$.

17

accounts for 523.81 hours.[9] As a result, the outstanding hours for the lodestar through retrial is 365.765 hours.[10]

Of those hours, 14.7 hours consisted of administrative tasks and 25.5 hours consisted of travel. Because Defendant timely paid the initial fee award and was not responsible for any delay in payment, the court determines that $205.00 is a reasonable hourly rate, that $75.00 is a reasonable hourly rate for the administrative tasks, and that $102.50[11] is a reasonable hourly rate for travel. The outstanding lodestar amount is therefore: (325.565 hours[12] x $205.00) + (14.7 hours x $75.00) + (25.5 hours x $102.50) = $66,740.825 + $1,102.50 + 2,613.75 = $70,457.08.

Attorney Pettersen expended 41.8 hours on appeal, 2.6 hours of which constituted administrative tasks. *See* Doc. 250-1 at 2, ¶ 3. The lodestar amount for the appeal is therefore: (39.2 hours[13] x $275.00) + (2.60 hours x $75.00) = $10,780.00 + $195.00 = $10,975.00.

### H.    Whether a Further Adjustment is Appropriate.

To the extent Plaintiff seeks an upward adjustment of fees because this case is one of the first arising under either VOSHA or VESTA, it is not warranted by the facts and circumstances of this case. While this was a novel case in this court under VESTA, the theory of the case was retaliation, which was not novel. It was also by no means a novel case under VOSHA. It was neither complex, nor was it an undesirable one in terms of Plaintiff's ability to find counsel to represent him. Although Plaintiff was successful on both of his liability claims at trial, he did not prevail on his punitive damages claim, which was a significant portion of his claims.

As the Second Circuit has observed, "attorney's fees are to be awarded with an eye

---

[9] 107,381.59 / 205 = 523.81.

[10] 889.575 − 523.81 = 365.765.

[11] 205 x 0.5 = 102.50.

[12] 365.765 − 14.7 − 25.5 = 325.565.

[13] 41.8 − 2.6 = 39.2.

18

to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (internal quotation marks and citation omitted). "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained[.]" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted). The court is not limited to assessing success on individual claims but, rather, must consider "the [overall] quantity and quality of relief obtained[.]" *Id.* (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)). Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436; *see also Grant*, 973 F.2d at 101 ("[T]he district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation.").

The Second Circuit recognized that "Vermont law permits trial courts to consider the litigation results obtained by a prevailing plaintiff in calculating a reasonable fee award." (Doc. 249-1 at 11.) "Accordingly, a district court has discretion to reduce a fee award based on its assessment of the plaintiff's degree of success." *Id.* It acknowledged that "the amount of damages awarded to a plaintiff [can be] *one* measure of their success[,]" but determined that proportionality between a plaintiff's damages award and its attorney's fee award "cannot be given [a] determinative effect[.]" *Id.* at 14 (emphasis in original). It held that:

> When considering one-sided fee-shifting provisions under Vermont law, courts may not reduce a fee award just because it was larger than the amount of relief the plaintiff obtained. Nor can a trial court deem a fee award unreasonable solely because a plaintiff's damages award is small in absolute terms, or because the plaintiff "failed to receive all relief requested." *L'Esperance* [*v. Benware*], [2003 VT 43, ¶ 25, 175 Vt. 292, 302,] 830 A.2d [675,] 684.

19

*Id.* at 15 (alteration adopted). It further noted that:

> The District Court was not without authority to conclude that [Plaintiff] did not achieve complete success in this case, and, on remand, it may properly consider his results when assessing a reasonable fee award. But its conclusion as to a reasonable fee award cannot be determined by the amount of [Plaintiff's] damages award, considered either on its own or in proportion to the amount of the fee award.

*Id.* at 18.

In further reducing its fee award, the court does not consider proportionality, but it does consider the overall degree of success Plaintiff achieved. Plaintiff objects to the court's consideration of the settlement offer because "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded." *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992). "Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing forward with their litigation." *Id.* at 140-41. Accordingly, "[a]bsent a showing of bad faith, a party's declining settlement offers should not operate to reduce an otherwise appropriate fee award." *Id.* at 141 (alteration adopted) (internal quotation marks and citation omitted); *see also Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 542 (S.D.N.Y. 2008) ("Nor is it appropriate to reduce the lodestar on the grounds that the plaintiff might have settled earlier and still obtained a substantial recovery at that time."). Some courts, however, have considered a settlement offer as a factor in its analysis of a plaintiff's overall success.[14] *See, e.g., Lohman v. Duryea Borough*, 574 F.3d 163, 167-68 (3d Cir. 2009) (reducing attorney's fees award where the plaintiff was offered $75,000.00 in settlement and recovered only $12,205.00 at trial); *see also Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers

---

[14] Use of settlement negotiations in considering the reasonableness of attorney's fee does not violate Fed. R. Evid. 408 because it falls within the rule's "other purpose" exception. *See, e.g., Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 136 (D. Conn. 2010) (use of settlement evidence fits within Rule 408's "another purpose" exception where defendant was "not using the evidence for its probative value" but, rather, "to suggest that [plaintiff] acted unreasonably in incurring" its attorney's fees).

should be considered by the district court as a factor in determining an award of reasonable attorney's fees[.]'").

Plaintiff contends that the court's consideration of the offer of judgment was also inappropriate because, according to Plaintiff, the Supreme Court held in *Marek v. Chesney* that "attorney's fees are *only* impacted by an offer of judgment 'where the underlying statute defines "costs" to include attorney's fees[.]'" (Doc. 251 at 5-6) (emphasis in original) (quoting 473 U.S. 1, 9 (1985)).[15] He argues that because the underlying Vermont statutes at issue in the instant case distinguish between attorney's fees and costs, "Rule 68 in no way applied to reduce attorney's fees." (Doc. 251 at 6.) In considering "Congress' focus on the success achieved," however, the *Marek* Court opined that "[i]n a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney." *Marek*, 473 U.S. at 11. Plaintiff mistakes the purpose for which the court considered the offer of judgment, which was not disturbed by the Second Circuit.

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation. The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 246 (2d Cir. 2021) (alteration adopted) (internal quotation marks omitted) (quoting *Marek*, 473 U.S. at 5.) This cost-shifting rule "encourage[s] settlements without the burdens of additional litigation." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006). Defendant argues that the $55,000

---

[15] Under Rule 68, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). In the event that such an offer is made, but is not accepted, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

*Marek* is distinguishable as the issue there was whether, under Rule 68, an offer of judgment precludes a party from recovering attorney's fees incurred after the offer was made. This is a different inquiry than whether the court may consider the rejection of a judgment offer in evaluating the reasonableness of attorney's fees.

21

verdict in comparison to the $375,000 offer of judgment "is conclusive proof that no further litigation was necessary after the offer was made[.]" (Doc. 240 at 18.) The court agrees.

The offer of judgment is also relevant to the underlying purpose of Plaintiff's statutory claims. In examining VESTA, the Second Circuit observed that its "fee-shifting provision reflects the legislative determination that 'it is in the public interest to shift the burden of the expense to those responsible for the litigation[.]'" (Doc. 249-1 at 13) (quoting *Bisson v. Ward*, 628 A.2d 1256, 1259 (Vt. 1993)). Defendant was responsible for the litigation but offered to settle it promptly, whereas Plaintiff prolonged it. Although Plaintiff was successful on his statutory claims, he was unsuccessful on his punitive damages claims, which consumed substantial legal effort as it was a close question as to whether the availability of punitive damages should even be sent to the jury. One jury awarded an excessive amount of punitive damages that violated Due Process. The other jury awarded none. To reflect Plaintiff's overall degree of success, the court orders an additional across-the-board reduction of ten percent of Attorney Pettersen's fees, resulting in an award of $63,411.37[16] for work through retrial.

Finally, Defendant argues that Plaintiff's attorney's fee award on appeal should be subject to a downward adjustment because Plaintiff was only partially successful on appeal. Although the Second Circuit determined the thirty percent reduction was imposed in error, it upheld the court's twenty-five percent reduction for unreasonable hours and did not address Plaintiff's arguments that the court's downward adjustment was "based on factors already considered within the lodestar calculation[]" and that the "fee award was otherwise unreasonable because it was not large enough to 'induce a capable attorney to undertake the representation.'" *Id.* at 19 (citation omitted).

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Because Plaintiff's

---

[16] $70,457.08 \times (1 - 0.1) = 63,411.37$

appeal was taken in good faith and the issues on which Plaintiff did not prevail were inextricably intertwined with those on which he did, a downward adjustment to the attorney's fee award on appeal is not warranted. Plaintiff is therefore awarded $10,975.00 for the appeal.

## I.    Costs and Expenses.

Defendant has already satisfied the costs judgment from the court's initial determination of awards.[17] *See* Doc. 254-3. Plaintiff did not submit a bill of costs with his motion for attorney's fees on appeal. The court therefore does not award further costs and expenses.

## CONCLUSION

For the foregoing reasons, Plaintiff's renewed motion for attorney's fees and costs is GRANTED IN PART AND DENIED IN PART, (Doc. 232), Plaintiff's motion for attorney's fees on appeal is GRANTED, (Doc. 250), and Plaintiff's motion to apply the current hourly rate is GRANTED IN PART AND DENIED IN PART. (Doc. 251.) The court will enter judgment on the fee award in the amount of $63,411.37 and $10,975.00 consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _16th_ day of July, 2026.

Christina Reiss, Chief Judge
United States District Court

---

[17] Defendant challenges the alleged inclusion of costs that followed the Rule 68 offer of judgment, but Plaintiff clarified that the challenged "expenses were not requested anywhere in the [m]otion [for attorney's fees] or Bill of Costs." (Doc. 241 at 9-10.)

23